## PALKO *v.* CONNECTICUT.

No. 135. Argued November 12, 1937.—Decided December 6, 1937.

*Messrs. David Goldstein* and *George A. Saden* for appellant.

*Mr. Wm. H. Comley,* with whom *Mr. Lorin W. Willis,* State's Attorney, was on the brief, for Connecticut.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

A statute of Connecticut permitting appeals in criminal cases to be taken by the state is challenged by appellant as an infringement of the Fourteenth Amendment of the Constitution of the United States. Whether the challenge should be upheld is now to be determined.

Appellant was indicted in Fairfield County, Connecticut, for the crime of murder in the first degree. A jury

found him guilty of murder in the second degree, and he was sentenced to confinement in the state prison for life. Thereafter the State of Connecticut, with the permission of the judge presiding at the trial, gave notice of appeal to the Supreme Court of Errors. This it did pursuant to an act adopted in 1886 which is printed in the margin.[1] Public Acts, 1886, p. 560; now § 6494 of the General Statutes. Upon such appeal, the Supreme Court of Errors reversed the judgment and ordered a new trial. *State* v. *Palko,* 121 Conn. 669; 186 Atl. 657. It found that there had been error of law to the prejudice of the state (1) in excluding testimony as to a confession by defendant; (2) in excluding testimony upon cross-examination of defendant to impeach his credibility, and (3) in the instructions to the jury as to the difference between first and second degree murder.

Pursuant to the mandate of the Supreme Court of Errors, defendant was brought to trial again. Before a jury was impaneled and also at later stages of the case he made the objection that the effect of the new trial was to place him twice in jeopardy for the same offense, and in so doing to violate the Fourteenth Amendment of the Constitution of the United States. Upon the overruling of the objection the trial proceeded. The jury returned a verdict of murder in the first degree, and the court sentenced the defendant to the punishment of

---

[1] "Sec. 6494. *Appeals by the state in criminal cases.* Appeals from the rulings and decisions of the superior court or of any criminal court of common pleas, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court of errors, in the same manner and to the same effect as if made by the accused."

A statute of Vermont (G. L. 2598) was given the same effect and upheld as constitutional in *State* v. *Felch,* 92 Vt. 477; 105 Atl. 23.

Other statutes, conferring a right of appeal more or less limited in scope, are collected in the American Law Institute Code of Criminal Procedure, June 15, 1930, p. 1203.

death. The Supreme Court of Errors affirmed the judgment of conviction, 122 Conn. 529; 191 Atl. 320, adhering to a decision announced in 1894, *State* v. *Lee,* 65 Conn. 265; 30 Atl. 1110, which upheld the challenged statute. Cf. *State* v. *Muolo,* 118 Conn. 373; 172 Atl. 875. The case is here upon appeal. 28 U. S. C., § 344.

1. The execution of the sentence will not deprive appellant of his life without the process of law assured to him by the Fourteenth Amendment of the Federal Constitution.

The argument for appellant is that whatever is forbidden by the Fifth Amendment is forbidden by the Fourteenth also. The Fifth Amendment, which is not directed to the states, but solely to the federal government, creates immunity from double jeopardy. No person shall be "subject for the same offense to be twice put in jeopardy of life or limb." The Fourteenth Amendment ordains, "nor shall any State deprive any person of life, liberty, or property, without due process of law." To retry a defendant, though under one indictment and only one, subjects him, it is said, to double jeopardy in violation of the Fifth Amendment, if the prosecution is one on behalf of the United States. From this the consequence is said to follow that there is a denial of life or liberty without due process of law, if the prosecution is one on behalf of the People of a State. Thirty-five years ago a like argument was made to this court in *Dreyer* v. *Illinois,* 187 U. S. 71, 85, and was passed without consideration of its merits as unnecessary to a decision. The question is now here.

We do not find it profitable to mark the precise limits of the prohibition of double jeopardy in federal prosecutions. The subject was much considered in *Kepner* v. *United States,* 195 U. S. 100, decided in 1904 by a closely divided court. The view was there expressed for a majority of the court that the prohibition was not confined

to jeopardy in a new and independent case. It forbade jeopardy in the same case if the new trial was at the instance of the government and not upon defendant's motion. Cf. *Trono* v. *United States,* 199 U. S. 521. All this may be assumed for the purpose of the case at hand, though the dissenting opinions (195 U. S. 100, 134, 137) show how much was to be said in favor of a different ruling. Right-minded men, as we learn from those opinions, could reasonably, even if mistakenly, believe that a second trial was lawful in prosecutions subject to the Fifth Amendment, if it was all in the same case. Even more plainly, right-minded men could reasonably believe that in espousing that conclusion they were not favoring a practice repugnant to the conscience of mankind. Is double jeopardy in such circumstances, if double jeopardy it must be called, a denial of due process forbidden to the states? The tyranny of labels, *Snyder* v. *Massachusetts,* 291 U. S. 97, 114, must not lead us to leap to a conclusion that a word which in one set of facts may stand for oppression or enormity is of like effect in every other.

We have said that in appellant's view the Fourteenth Amendment is to be taken as embodying the prohibitions of the Fifth. His thesis is even broader. Whatever would be a violation of the original bill of rights (Amendments I to VIII) if done by the federal government is now equally unlawful by force of the Fourteenth Amendment if done by a state. There is no such general rule.

The Fifth Amendment provides, among other things, that no person shall be held to answer for a capital or otherwise infamous crime unless on presentment or indictment of a grand jury. This court has held that, in prosecutions by a state, presentment or indictment by a grand jury may give way to informations at the instance of a public officer. *Hurtado* v. *California,* 110 U. S. 516; *Gaines* v. *Washington,* 277 U. S. 81, 86. The Fifth Amendment provides also that no person shall be

compelled in any criminal case to be a witness against himself. This court has said that, in prosecutions by a state, the exemption will fail if the state elects to end it. *Twining* v. *New Jersey,* 211 U. S. 78, 106, 111, 112. Cf. *Snyder* v. *Massachusetts, supra,* p. 105; *Brown* v. *Mississippi,* 297 U. S. 278, 285. The Sixth Amendment calls for a jury trial in criminal cases and the Seventh for a jury trial in civil cases at common law where the value in controversy shall exceed twenty dollars. This court has ruled that consistently with those amendments trial by jury may be modified by a state or abolished altogether. *Walker* v. *Sauvinet,* 92 U. S. 90; *Maxwell* v. *Dow,* 176 U. S. 581; *New York Central R. Co.* v. *White,* 243 U. S. 188, 208; *Wagner Electric Mfg. Co.* v. *Lyndon,* 262 U. S. 226, 232. As to the Fourth Amendment, one should refer to *Weeks* v. *United States,* 232 U. S. 383, 398, and as to other provisions of the Sixth, to *West* v. *Louisiana,* 194 U. S. 258.

On the other hand, the due process clause of the Fourteenth Amendment may make it unlawful for a state to abridge by its statutes the freedom of speech which the First Amendment safeguards against encroachment by the Congress, *De Jonge* v. *Oregon,* 299 U. S. 353, 364; *Herndon* v. *Lowry,* 301 U. S. 242, 259; or the like freedom of the press, *Grosjean* v. *American Press Co.,* 297 U. S. 233; *Near* v. *Minnesota ex rel. Olson,* 283 U. S. 697, 707; or the free exercise of religion, *Hamilton* v. *Regents,* 293 U. S. 245, 262; cf. *Grosjean* v. *American Press Co., supra; Pierce* v. *Society of Sisters,* 268 U. S. 510; or the right of peaceable assembly, without which speech would be unduly trammeled, *De Jonge* v. *Oregon, supra; Herndon* v. *Lowry, supra;* or the right of one accused of crime to the benefit of counsel, *Powell* v. *Alabama,* 287 U. S. 45. In these and other situations immunities that are valid as against the federal government by force of the specific

pledges of particular amendments [2] have been found to be implicit in the concept of ordered liberty, and thus, through the Fourteenth Amendment, become valid as against the states.

The line of division may seem to be wavering and broken if there is a hasty catalogue of the cases on the one side and the other. Reflection and analysis will induce a different view. There emerges the perception of a rationalizing principle which gives to discrete instances a proper order and coherence. The right to trial by jury and the immunity from prosecution except as the result of an indictment may have value and importance. Even so, they are not of the very essence of a scheme of ordered liberty. To abolish them is not to violate a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder* v. *Massachusetts, supra,* p. 105; *Brown* v. *Mississippi, supra,* p. 285; *Hebert* v. *Louisiana,* 272 U. S. 312, 316. Few would be so narrow or provincial as to maintain that a fair and enlightened system of justice would be impossible without them. What is true of jury trials and indictments is true also, as the cases show, of the immunity from compulsory self-incrimination. *Twining* v. *New Jersey, supra.* This too might be lost, and justice still be done. Indeed, today as in the past there are students of our penal system who look upon the immunity as a mischief rather than a benefit, and who

---

[2] First Amendment: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence."

would limit its scope, or destroy it altogether.[3]  No doubt there would remain the need to give protection against torture, physical or mental.  *Brown* v. *Mississippi, supra.* Justice, however, would not perish if the accused were subject to a duty to respond to orderly inquiry.  The exclusion of these immunities and privileges from the privileges and immunities protected against the action of the states has not been arbitrary or casual.  It has been dictated by a study and appreciation of the meaning, the essential implications, of liberty itself.

We reach a different plane of social and moral values when we pass to the privileges and immunities that have been taken over from the earlier articles of the federal bill of rights and brought within the Fourteenth Amendment by a process of absorption.  These in their origin were effective against the federal government alone.  If the Fourteenth Amendment has absorbed them, the process of absorption has had its source in the belief that neither liberty nor justice would exist if they were sacrificed.  *Twining* v. *New Jersey, supra,* p. 99.[4]  This is true, for illustration, of freedom of thought, and speech.

[3] See, e. g. Bentham, Rationale of Judicial Evidence, Book IX, Pt. 4, c. III; Glueck, Crime and Justice, p. 94; cf. Wigmore, Evidence, vol. 4, § 2251.

Compulsory self-incrimination is part of the established procedure in the law of Continental Europe.  Wigmore, *supra,* p. 824; Garner, Criminal Procedure in France, 25 Yale L. J. 255, 260; Sherman, Roman Law in the Modern World, vol. 2, pp. 493, 494; Stumberg, Guide to the Law and Legal Literature of France, p. 184.  Double jeopardy too is not everywhere forbidden.  Radin, Anglo American Legal History, p. 228.

[4] ". . . it is possible that some of the personal rights safeguarded by the first eight Amendments against National action may also be safeguarded against state action, because a denial of them would be a denial of due process of law.  *Chicago, Burlington & Quincy Railroad* v. *Chicago,* 166 U. S. 226.  If this is so, it is not because those rights are enumerated in the first eight Amendments, but because they are of such a nature that they are included in the conception of due process of law."

Of that freedom one may say that it is the matrix, the indispensable condition, of nearly every other form of freedom. With rare aberrations a pervasive recognition of that truth can be traced in our history, political and legal. So it has come about that the domain of liberty, withdrawn by the Fourteenth Amendment from encroachment by the states, has been enlarged by latter-day judgments to include liberty of the mind as well as liberty of action.[5] The extension became, indeed, a logical imperative when once it was recognized, as long ago it was, that liberty is something more than exemption from physical restraint, and that even in the field of substantive rights and duties the legislative judgment, if oppressive and arbitrary, may be overridden by the courts. Cf. *Near* v. *Minnesota ex rel. Olson, supra; De Jonge* v. *Oregon, supra.* Fundamental too in the concept of due process, and so in that of liberty, is the thought that condemnation shall be rendered only after trial. *Scott* v. *McNeal,* 154 U. S. 34; *Blackmer* v. *United States,* 284 U. S. 421. The hearing, moreover, must be a real one, not a sham or a pretense. *Moore* v. *Dempsey,* 261 U. S. 86; *Mooney* v. *Holohan,* 294 U. S. 103. For that reason, ignorant defendants in a capital case were held to have been condemned unlawfully when in truth, though not in form, they were refused the aid of counsel. *Powell* v. *Alabama, supra,* pp. 67, 68. The decision did not turn upon the fact that the benefit of counsel would have been guaranteed to the defendants by the provisions of the Sixth Amendment if they had been prosecuted in a federal court. The decision turned upon the fact that in the particular situation laid before us in the evidence the benefit of counsel was essential to the substance of a hearing.

---

[5] The cases are brought together in Warren, The New Liberty under the 14th Amendment, 39 Harv. L. Rev. 431.

Our survey of the cases serves, we think, to justify the statement that the dividing line between them, if not unfaltering throughout its course, has been true for the most part to a unifying principle. On which side of the line the case made out by the appellant has appropriate location must be the next inquiry and the final one. Is that kind of double jeopardy to which the statute has subjected him a hardship so acute and shocking that our polity will not endure it? Does it violate those "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions"? *Hebert* v. *Louisiana, supra.* The answer surely must be "no." What the answer would have to be if the state were permitted after a trial free from error to try the accused over again or to bring another case against him, we have no occasion to consider. We deal with the statute before us and no other. The state is not attempting to wear the accused out by a multitude of cases with accumulated trials. It asks no more than this, that the case against him shall go on until there shall be a trial free from the corrosion of substantial legal error. *State* v. *Felch,* 92 Vt. 477; 105 Atl. 23; *State* v. *Lee, supra.* This is not cruelty at all, nor even vexation in any immoderate degree. If the trial had been infected with error adverse to the accused, there might have been review at his instance, and as often as necessary to purge the vicious taint. A reciprocal privilege, subject at all times to the discretion of the presiding judge, *State* v. *Carabetta,* 106 Conn. 114; 127 Atl. 394, has now been granted to the state. There is here no seismic innovation. The edifice of justice stands, its symmetry, to many, greater than before.

2. The conviction of appellant is not in derogation of any privileges or immunities that belong to him as a citizen of the United States.

There is argument in his behalf that the privileges and immunities clause of the Fourteenth Amendment as well as the due process clause has been flouted by the judgment.

*Maxwell* v. *Dow, supra,* p. 584, gives all the answer that is necessary.

The judgment is

*Affirmed.*

Mr. Justice Butler dissents.