Robert Chester GALLOWAY, Plaintiff-Appellee,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Defendant-Appellant.

No. 27461.

United States Court of Appeals
Fifth Circuit.

Jan. 6, 1970.

Rehearing Denied and Rehearing En Banc Denied April 8, 1970.

Crawford C. Martin, Atty. Gen. of Tex., Howard M. Fender, Jo Betsy Lewallen, Asst. Attys. Gen., Nola White, First Asst. Atty. Gen., Hawthorne Phillips, Executive Asst. Atty. Gen., W. V. Geppert, Staff Legal Asst. Atty. Gen., Robert C. Flowers, Asst. Atty. Gen., Austin, Tex., for appellant.

Fred Time, Marks, Time & Aranson, Dallas, Tex., for appellee.

Before THORNBERRY, GODBOLD and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

Galloway was charged in Texas state court with murder, including both murder with malice and murder without malice, as a result of a nightclub slaying. The jury brought in a verdict of guilty of murder without malice, which carries a maximum statutory penalty of five years in Texas. The verdict was silent as to the charge of murder with malice.

Galloway requested, in accordance with Texas procedure,[1] that his sentence be fixed by the jury which had found him guilty. After several hours of deliberation the jury, still unable to agree on punishment, was discharged by the trial judge with the written consent of Galloway's attorney, and a mistrial was declared.[2]

Upon retrial under the original indictment, Galloway was convicted of murder with malice and sentenced to twenty years in prison. His petition for a writ of habeas corpus was granted by the District Court on the ground that due process prevented his being retried for murder with malice. Subsequent to the District Court's decision, the Supreme Court expanded the protections of the Fourteenth Amendment's due process clause by holding that state convictions "must be judged * * * under this Court's interpretations of the Fifth Amendment double jeopardy provision." Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, 717 (1969). We hold, as have our brethren in the Tenth Circuit,[3] that Benton is to be applied retroactively to retrials held before that opinion was handed down, and further that under the circumstances of this case Galloway was placed twice in jeopardy.

The Supreme Court has set up the following guideposts for determining whether or not its decisions on criminal procedure are to be given retroactive effect:

(a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203 (1967).

By far the most important of these factors is the purpose of the new rule. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 1048, 22 L.Ed.2d 248, 256 (1969); United States ex rel. Allison v. New Jersey, 418 F.2d 332 (3d Cir. 1969); United States v. Lucia, 416 F.2d 920 (5th Cir., 1969). Exclusionary rules aimed at deterring unlawful police practices have generally been made prospective only. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), denying retroactive effect to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), giving only prospective application to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In those cases retroactive application could have done little to further the Court's aim of deterrence. But where violations of the defendant's constitutional rights have gone to the fairness of the trial itself, and especially where those violations have been correctible on a new trial, the Supreme Court has applied its rules retroactively. Thus the right of the indigent to appointed counsel enunciated in Gideon v.

1. 3 Vernon's Texas Code of Criminal Procedure Art. 37.07(2) (b) (1965).

2. Under the provisions of 3 Vernon's Texas Code of Criminal Procedure Art. 37.07(2) (d) (1965), providing that in such an instance "no jeopardy shall attach."

3. Booker v. Phillips, 418 F.2d 424 (1969). Contra, Spidle v. State, 446 S.W.2d 793 (Mo.S.Ct. 1969).

Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) has been granted retroactively, and the expanded right of confrontation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) was applied retroactively in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

In *Linkletter, supra,* the Supreme Court first applied the test of whether the new rule went to the "fairness of the trial." Here we are concerned with whether the defendant should be on trial at all. We conclude that the purpose of the *Benton* rule warrants retroactive application.

Nor do the second and third factors persuade us otherwise. The "reliance by law enforcement authorities" in the second factor has generally been construed to mean reliance on prior decisions by police in their out-of-court investigations. Johnson v. New Jersey, *supra*; Desist v. United States, *supra; but see* DeStefano v. Woods, 392 U.S. 631, 88 S. Ct. 2093, 20 L.Ed.2d 1308 (1968). The case at bar is entirely unrelated to police practices tailored to past decisions of the Supreme Court.

Reliance by state courts is important in the third factor, the impact of retroactivity on the administration of justice in the states. Impact may be measured by two criteria—number of convictions which would have to be reopened, which depends on how frequently the states have relied on the old standard, and other burdens on the state courts. Reversals for failure to comply with *Benton* standards should not be frequent, since "every State incorporates some form of the prohibition in its constitution or common law." *Benton, supra,* 395 U.S. at 795, 89 S.Ct. at 2063, 23 L.Ed.2d at 716. Furthermore, the viability of Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, overruled by *Benton,* has been in doubt at least since United States ex rel. Hetenyi v. Wilkins, 348 F. 2d 844 (2d Cir. 1965) and the Supreme Court's avoidance of the incorporation question in Cichos v. Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966).

Cases in which the states justifiably relied on *Palko* can be only very few. Retroactive application of *Benton* would not create the other administrative complexities contemplated in *Desist, supra,* since the determination of the factual basis of a double jeopardy claim should be a relatively simple matter.

Even if these latter two factors cut more strongly than they do in favor of prospective application only, we should not deem them controlling. *Desist, supra,* 394 U.S. at 244, 89 S.Ct. 1030, 1048, 22 L.Ed.2d at 256 (1969). "The fundamental nature of the guarantee against double jeopardy can hardly be doubted. * * * it is clearly 'fundamental to the American scheme of justice.'" *Benton, supra,* 395 U.S. at 795, 89 S.Ct. at 2063, 23 L.Ed.2d at 716–717 (1969). This guarantee protects Galloway even though his retrial was held prior to *Benton.*

Jeopardy, for purposes of the federal rule, may so attach as to prevent a second trial even after a mistrial. Any other rule would allow prosecutors to harass defendants through repeated trials or to move for a mistrial and seek a jury more favorable to the government. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Exceptions have been created in cases of "imperious necessity" or where "the ends of public justice would otherwise be defeated," Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949) (absence of witnesses from war zone); Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891) (juror bias disclosed after voir dire); United States v. Perez, 22 U.S. 579, 9 Wheat. 579, 6 L.Ed. 165 (1824) (hung jury).

The District of Columbia Circuit, under peculiar circumstances, has upheld the declaration of a mistrial and subsequent retrial after the jury had rendered its verdict. In Crawford v. United States, 109 U.S.App.D.C. 219, 285 F. 2d 661 (1960), defendant was found guilty on both counts in his indictment, but some jurors informed the judge after the jury had been formally dismissed

in the case that they had not had a chance to vote on one of the counts. The trial judge set aside the verdict and ordered a new trial. The Court of Appeals affirmed defendant's second conviction on both counts.

■ Crawford, like all the other mistrial-double jeopardy cases, turns on its special facts, 285 F.2d at 662, 663; Downum, supra, 372 U.S. at 736, 83 S. Ct. 1033, 10 L.Ed.2d at 102–103 (1963). A mistrial may be followed by retrial "only in very extraordinary and striking circumstances." 372 U.S. at 736, 83 S. Ct. at 1034, 10 L.Ed.2d at 103. In Crawford, those exceptional circumstances were that the jury had brought in a presumptively valid verdict of guilty as charged. Any prejudice to the defendant on retrial would be minimal, since he could be convicted of no greater offense than he had been convicted of on his first trial. In the case before us, however, the first jury had refused to convict of murder with malice. The retrial subjected him to a second prosecution for an offense of which he had been impliedly acquitted.[4]

The rule that an implied acquittal bars reprosecution was enunciated in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). Defendant in that case had been indicted for both murder in the first degree and murder in the second degree. The jury convicted him only of the latter. The Supreme Court held that the jury's failure to address itself to murder in the first degree amounted to a verdict of not guilty on that charge.

Defendant Galloway was impliedly acquitted of murder with malice by the jury's silence unless it can be established that the elements of that offense are identical to those of murder without malice, the offense of which he was convicted. The state of Texas calls our attention to 2A Vernon's Texas Penal Code Art. 1256,

Whoever shall voluntarily kill any person within this State shall be guilty of murder. Murder shall be distinguished from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or which excuse or justify the killing,

pointing out that this definition nowhere differentiates between murder with malice and murder without malice. Article 1257a allows the defendant to introduce evidence of lack of malice, and Article 1257b provides for a five-year ceiling on imprisonment for murder without malice. Subsequent to the enactment of the above statute in repeal of the former provisions providing for degrees of murder, the Texas state courts have held that the prosecution's case is simply for murder, rather than for either murder with malice or murder without malice, so that a conviction of only murder without malice will not bar a retrial for murder with malice if the case is reversed on appeal. Beckham v. State, 148 S.W.2d 1104 (Ct.Crim.App. Tex.1941).

The state urges that Texas' interpretation of its own statute is binding upon us by virtue of Cichos v. Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966). The Supreme Court in that case held that defendant had not been twice placed in jeopardy because the offense of which he was convicted and that on which the jury was silent were virtually identical. Cichos was convicted of reckless homicide, carrying a maximum penalty of five years' imprisonment, and the jury was silent as to the

---

4. No other procedural barriers stand in the way of Galloway's assertion of his double jeopardy defense. Defense counsel's written consent to the mistrial does not amount to a waiver of the double jeopardy plea, since the protections of Benton had not yet been announced. A waiver of a constitutional right is ineffective unless made knowingly. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Defendant's failure to comply with Texas procedure for raising a plea of double jeopardy did not bar his assertion of that federal defense. Galloway sufficiently raised that issue by his pre-trial motion to strike that part of the indictment which charged him with murder with malice and by his submission of affidavits relating the circumstances of the first trial.

charge of vehicular homicide, which carries a possible sentence of 21 years. The Supreme Court, noting that "[b]oth crimes require proof of the same elements to sustain a conviction under Indiana law" and that the general practice was to submit both issues to the jury with instructions to return a verdict of guilty as to no more than one, agreed with the Indiana Supreme Court that the practical effect of the submission of both charges was nothing more than to give the jury discretion in fixing a higher or lower penalty. Under the circumstances, resubmission of the issue of involuntary manslaughter on defendant's second trial did not subject him once again to possible conviction of a crime of which he had been acquitted, but merely allowed the jury to fix a higher penalty for a crime of which he had been properly convicted. The Supreme Court's approach did not take the Indiana state decisions as controlling, but merely looked to them for guidance as to the relationship between the crimes charged.

 We are bound not by the pronouncements of the Texas courts on the double jeopardy effect of a retrial for murder with malice, but by Texas law on the relationship of the two offenses as it affects the implied acquittal doctrine. One recent case severely undercuts the state courts' identity doctrine as to the murder statute. In Welcome v. State, 438 S.W.2d 99 (Ct.Crim.App.Tex. 1969), Judge Onion held that a conviction for the lesser included offense of assault with intent to murder without malice would bar a prosecution on retrial after appeal for assault with intent to murder with malice. He distinguished the murder statute [5] on the grounds that the legislature had manifested its intent to create two different offenses called "assault" by providing separate maximum and minimum sentences for each offense, and by limiting a double penalty

provision to convictions for murder without malice. 438 S.W.2d at 105.

 The rule of *Cichos* is that such differing penalty provisions are not controlling as to whether a defendant has been twice placed in jeopardy. Our inquiry should be directed instead to whether the elements of the crimes charged are the same. There can be little doubt that murder with malice and murder without malice are separate and distinct offenses under Texas law. Once the defendant satisfies his burden of going forward with evidence of lack of malice, the state must prove beyond a reasonable doubt that defendant acted with malice aforethought. McNeil v. State, 154 S.W.2d 653 (Ct.Crim.App. Tex.1941); Swilley v. State, 25 S.W.2d 1098 (Ct.Crim.App.Tex.1929). Should the state prove every other element in its case, if it fails this burden it has proved murder without malice. If it carries this burden, it has proved a new element and in effect a new offense, that of murder with malice. The state may not have the opportunity once again to prove that element once it has gone to the jury and failed. Galloway's retrial for murder with malice placed him twice in jeopardy in violation of the Fourteenth Amendment.

The judgment of the District Court is affirmed.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

5. The state calls our attention to Walton v. Beto, (Civ.No.4989, E.D.Tex., June 5, 1969), which relied on *Welcome* in upholding a conviction similar to Gallo-

way's. The district court in *Walton* did not have the benefit of *Benton*, which later that month applied federal double jeopardy standards to state prosecutions.