Samuel Ed **ROBINSON**

v.

**William S. NEIL, Warden, Tennessee
State Penitentiary.**

**Civ. A. No. 5887.**

United States District Court,
E. D. Tennessee, S. D.

Jan. 7, 1971.

James D. Robinson, Chattanooga,
Tenn., for petitioner.

David M. Pack, Atty. Gen., Nashville,
Tenn., Edward E. Davis, Dist. Atty.
Gen., Chattanooga, Tenn., for respondent.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is a proceeding upon a petition
for a writ of habeas corpus wherein the
petitioner seeks to set aside his convictions and sentences in three cases, each
entitled States of Tennessee v. Samuel
Ed Robinson, being Docket Nos. 103,-
810, 103,811, and 103,812 in the Criminal Court for Hamilton County, Tennessee.

It appears undisputed in this case that
the petitioner was tried and convicted of
three offenses of assault and battery in
violation of an ordinance of the City of
Chattanooga, and was fined $50.00 and
assessed costs upon each offense.
Thereafter, on September 26, 1962, a
grand jury of Hamilton County returned three indictments in the above
three cases, each charging petitioner
with an offense of assault with intent to
commit first degree murder. The occurrences giving rise to the three indictments were the same as those giving
rise to the three city charges. Upon petitioner's plea of guilty to the indictments, he received two sentences of
three to ten years and one sentence of
three to five years, such sentences to
run consecutively. Upon July 12, 1966,
petitioner filed a petition for a writ of
habeas corpus in the Criminal Court for
Davidson County, Tennessee, upon
grounds of double jeopardy. The writ
was denied. Petitioner appealed to the
Tennessee Supreme Court, which affirmed the judgment below. Upon

March 28, 1967, petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Tennessee upon grounds of double jeopardy. This action was subsequently transferred to this court. By order dated May 15, 1967, this Court denied the writ. See Robinson v. Henderson, 268 F.Supp. 349 (E.D. Tenn., 1967). Basing its deciion upon Palko v. Connecticut, (1937) 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, and the line of authority following the *Palko* decision, this Court concluded that the double jeopardy provision of the Fifth Amendment was not applicable to the states and that no Federal Constitutional error was alleged in the petition. Petitioner appealed to the Sixth Circuit Court of Appeals, which affirmed this Court's denial of the writ by order dated April 10, 1968.

The instant petition again raises the double jeopardy argument. As in the prior petition filed in 1967, the petitioner's sole contention in the instant case is that he was twice placed in jeopardy for the same offense and that the convictions and sentences resulting from the second trial are therefore invalid. The petitioner relies upon the recently decided Supreme Court case of Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). The facts, as stated above, being undisputed, the issue before the Court is one of law.

The facts in Waller v. Florida were as follows. Joseph Waller, together with a number of other persons, removed a canvas mural from the wall inside of the City Hall in St. Petersburg, Florida. As a result of this act, Mr. Waller was found guilty in municipal court of destruction of city property and disorderly breach of the peace and was sentenced to 180 days in the county jail. Subsequently, an information was filed against Mr. Waller charging him with grand larceny. Mr. Waller was found guilty of the charge, was sentenced six months to five years, less 170 days of the 180-day sentence imposed by the municipal court. It was undisputed that the same facts gave rise to the city and state charges placed against Mr. Waller. In discussing the applicability of the Fifth Amendment's prohibition against double jeopardy as applied to the States in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Court specifically held as follows:

"We decide only that the Florida courts were in error to the extent of holding that—

'* * * even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court.' "

The Court concluded that the defendant's second trial based on the same facts giving rise to the municipal court trial constituted double jeopardy violative of the Fifth and Fourteenth Amendments to the United States Constitution.

The relevant factual situation in the instant case and in *Waller* are substantially identical. The only legal problem presented is whether the holding in *Waller* should be applied retroactively. The petitioner contends that it should and in support of his legal position relies upon certain footnotes in Waller v. Florida, *supra*, and in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The respondent on the other hand relies upon the criteria outlined in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, and Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), and contends that in accordance with these criteria the decision in *Waller* should be applied prospectively only.

In the original memorandum filed by the Court upon September 22, 1970, this Court concluded after consideration of the relevant cases upon the double jeopardy question that:

Although there has never been a reasoned analysis by the Supreme Court on the issue of retroactivity, this

Court can only conclude from the above review of the cases that Benton v. Maryland and Waller v. Florida should each be accorded fully retroactive application.

In view of this conclusion the Court provided that a judgment would enter setting aside the petitioner's convictions and sentences.

The respondent filed a timely motion to reconsider. Upon reconsideration of the original memorandum opinion and cases upon the subject and for the reasons stated in a memorandum filed upon October 27, 1970, this Court concluded:

"* * * that the retroactivity of Waller v. Florida has not been resolved by the Supreme Court and must therefore be determined on the basis of the criteria established by the Supreme Court in the cases of Linkletter v. Walker, 381 U.S. 618 [85 S.Ct. 1731, 14 L.Ed.2d 601] (1965); Stovall v. Denno, 388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199] (1967); and Desist v. United States, 394 U.S. 244 [89 S. Ct. 1030, 22 L.Ed.2d 248] (1969)."

The Court thereupon set an evidentiary hearing to afford both parties an opportunity to submit any relevant evidence in support of their respective positions. Upon November 30, 1970, the respondent submitted certain statistical information for consideration by the Court in determining the impact of a retroactive application of the *Waller* case. The case has been briefed and argued and is now for decision by the Court.

■ In embarking upon this analysis of retrospective versus prospective effect of an overruling decision certain general principles have been clearly defined by the Supreme Court. The latest detailed pronouncement of these principles is to be found in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), wherein Justice Stewart observed:

"Ever since Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 [608], established that 'the Constitution neither prohibits nor requires retrospective effect' for decisions expounding new constitutional rules affecting criminal trials, the Court has viewed the retroactivity or nonretroactivity of such decisions as a function of three considerations. As we most recently summarized them in Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 [1203], 'the criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.' "

Accordingly, "the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective." See Linkletter v. Walker, *supra*. Applying the criteria outlined in the *Linkletter* case to the instant case, this Court must look to the history and purpose of the *Waller* rule; any reliance placed by the States upon the rule of law as it existed prior to *Waller*; and the effect on the administration of justice of a retrospective application of *Waller*.

In this regard the Court in Desist v. United States, *supra*, further outlines the relative importance of each criteria in weighing the relative merits of retroactivity.

"Foremost among these factors is the purpose to be served by the new constitutional rule * * * It is to be noted also that we have relied heavily on the factors of the extent of reliance and consequent burden on the administration of justice only when the purpose of the rule in question did not clearly favor either retroactivity or prospectivity."

The first appropriate inquiry to be undertaken is an examination of the history and purpose of the *Waller* rule. In

this regard, the specific holding of Waller v. Florida, *supra*, is as follows:

"We decide only that the Florida courts were in error to the extent of holding that—

'* * * even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court.'"

The decision in the *Waller* case, holding that a municipal court conviction and a state court conviction of the same offense constitutes double jeopardy and is in violation of the Fifth and Fourteenth Amendments, is in turn based upon the prior decision of the Supreme Court in the case of Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), wherein the Court overruled Palko v. Connecticut, *supra*, and held that the Fifth Amendment prohibition against double jeopardy was made applicable to the states through the Fourteenth Amendment.

In Benton v. Maryland, *supra*, the Court stated:

"* * * [W]e today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment. Insofar as it is inconsistent with this holding, Palko v. Connecticut is overruled."

In examining the purpose of the *Waller* case it is well to note the rationale, history and purpose of Benton v. Maryland as outlined by Justice Marshall:

"The fundamental nature of the guarantee against double jeopardy can hardly be doubted. Its origins can be traced to Greek and Roman times, and it became established in the common law of England long before this Nation's independence. See Bartkus v. Illinois, 359 U.S. 121, 151–155, 79 S. Ct. 676, 697, 3 L.Ed.2d 684 [705–707], (1959) (Black, J., dissenting). As with many other elements of the common law, it was carried into the jurisprudence of this Country through the medium of Blackstone, who codified the doctrine in his Commentaries. '[T]he plea of *autrefoits acquit*, or a former acquittal,' he wrote, 'is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence.' Today, every State incorporates some form of the prohibition in its constitution or common law. As this Court put it in Green v. United States, 355 U.S. 184, 187–188, 78 S. Ct. 221, 223, 2 L.Ed.2d 199, [204] [61 A.L.R.2d 1119] (1957), '[t]he underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' This underlying notion has from the very beginning been part of our constitutional tradition. Like the right to trial by jury, it is clearly 'fundamental to the American scheme of justice.' The validity of petitioner's larceny conviction must be judged not by the watered-down standard enunciated in *Palko*, but under this Court's interpretations of the Fifth Amendment double jeopardy provision."

Waller v. Florida is simply an expansion of the newly announced principles in Benton v. Maryland. In abrogating the "dual sovereignty" theory with regard to municipal and state charges based upon the identical offense, the Court relied upon the holding in *Benton* for the proposition that the Fifth Amendment prohibition against double jeopardy applied to the states. While recognizing that successive prosecutions

by state and federal governments had been held to be non-violative of the Double Jeopardy Clause, since dual sovereignties are involved [see Fox v. Ohio, 46 U.S. 410, 5 How. 410, 12 L.Ed. 213 (1847); Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959)], the Court held these cases inapplicable in a situation where the successive prosecutions were by municipal and state governments, both arms of the same sovereignty. Rather, in *Waller* the Court followed the rule previously established in the case of Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084 (1907), wherein it had been held that "a prosecution by a court of the United States is a bar to a subsequent prosecution by a territorial court (Philippine Islands), since both are arms of the same sovereign."

Having pointed out the reliance placed in *Waller* upon the prior decisions of Benton v. Maryland, *supra*, and Grafton v. United States, *supra*, two observations are appropriate.

One observation is that the retroactivity of the Benton decision has been decided and that case has been held to be "fully retroactive." See footnotes in both Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and Waller v. Florida, *supra*. Further, three circuits have considered the issue and have held *Benton* to be fully retroactive. See Mullreed v. Kropp, 425 F.2d 1095 (C.A. 6, 1970); Booker v. Phillips, 418 F.2d 424 (C.A. 10, 1969); and Galloway v. Beto, 421 F.2d 284 (C.A. 5, 1970). In the *Mullreed* case, *supra*, the Sixth Circuit reasoned the issue of retroactivity as follows:

"We think this case (*Benton*) goes beyond the concededly important consideration of the integrity of the truth determining process; it goes to the very quick of a long and cherished heritage in the administration of criminal justice, namely, the State's extended deprivation of liberty as the price for demanding successfully a trial process free of Constitutional infirmity. Therefore we conclude that *Benton* applies retroactively and is controlling here."

Although the retroactivity of the *Benton* decision is not necessarily determinative of the issue presented in the present case, that is, whether Waller v. Florida should be accorded retroactive effect, it is obvious that the reasoning which accords retroactivity to *Benton* must be given weighty consideration in determining the retroactivity of Waller v. Florida.

A second observation appropriate at this point is that Waller v. Florida overrules no previous federal judicial precedent. Rather, it relies upon a reassertion of the principles laid down in the 1907 decision of Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L. Ed. 1084. Accordingly, the *Waller* decision establishes no new federal constitutional interpretation except to the extent that it may overrule some local or state court decision to the contrary.

When the foregoing two observations are jointly considered, they appear to be tantamount to a prior adjudication upon the issue now before the Court and to require that Waller v. Florida be given fully retroactive effect. To the extent that the *Waller* decision asserts the double jeopardy rule of Benton v. Maryland, the issue of retroactivity has been adjudicated. To the extent that the *Waller* decision asserts the rule of Grafton v. United States to deny any dual sovereignty between a state and its municipalities, no new federal constitutional law is established and no former federal precedent is overruled.

A consideration of the two remaining criteria for determining the issue of retroactivity, that is, the reliance placed by law enforcement officials upon a contrary rule and the effect on the administration of justice of a retroactive application, would appear to be precluded under the foregoing discussion of Supreme Court decisions, for their analysis is appropriate only where retroactivity re-

mains in question after a consideration of the initial criteria. See Desist v. United States, *supra*.

It may be noted in this regard that Chief Justice Burger in a footnote to his opinion in the *Waller* case (see footnote # 3) lists 21 states which currently treat municipalities and the state as separate sovereigns for double jeopardy purposes. Obviously the State of Florida may be added to this list; so, too, may the State of Tennessee. See Mullins v. State, 214 Tenn. 366, 380 S.W.2d 201 (1964); Greenwood v. State, 65 Tenn. 567 (1873). While in a very real sense these state decisions are overruled by the *Waller* case, the states cannot be said in any sense to have relied upon a federal precedent in establishing their rule, as the federal precedent of Grafton v. United States was to the contrary, as pointed out in the *Waller* decision.

Although an examination of the impact of the *Waller* decision is precluded in accordance with the foregoing discussion of the authorities, it may be noted that the respondent has submitted certain data regarding this impact, consisting of responses received from law enforcement authorities in the various jurisdictions previously following the dual sovereignty rule. Disregarding any issue of admissibility of the data in its present form, it may be noted that the responding officials from ten states previously following the dual sovereignty rule expressed the opinion that the *Waller* decision would have little or no effect on the administration of justice in their state (Alabama, Illinois, Idaho, Mississippi, Missouri, Nevada, Nebraska, Oregon, Wisconsin and Wyoming). Four expressed the opinion that sufficient data was not available to make an evaluation (Colorado, Minnesota, North Dakota and Oklahoma). And no response was received from seven states (Alaska, Iowa, Kansas, Louisiana, Ohio, South Dakota and Florida). Only the responses from two states (Tennessee and Washington) expressed the opinion that there would be a substantial effect on the administration of justice by a retroactive application of the *Waller* decision. Except upon the local level within this jurisdiction, the data submitted does not appear to satisfactorily establish a preference either for or against retroactivity.

A judgment will accordingly enter setting aside the petitioner's convictions and sentences in Criminal Docket Nos. 103,810, 103,811, and 103,812 in the Criminal Court for Hamilton County, Tennessee, and the petitioner will be forthwith released from custody by reason of the said convictions and sentences; provided, however, that release of the petitioner will be stayed for a period of ten (10) days following the entry of the judgment on this opinion to permit the respondent time within which to elect whether he shall take an appeal herein or seek any further stay from the appellate court. Should no appeal be filed within ten days, the petitioner will be forthwith released without further conditions upon his release. Should an appeal be filed within ten days, then, pursuant to Rule 23(c), Federal Rules of Appellate Procedure, the petitioner, as a condition to his release, will be required to file a bail bond in the sum of $1,000.-00 with good and sufficient surety thereon, such bond to be returnable to this Court and conditioned in the usual form.