Samuel Ed ROBINSON, Petitioner-
Appellee,

v.

William S. NEIL, Warden, Tennessee
State Penitentiary, Respondent-
Appellant.

No. 71-1138.

United States Court of Appeals,
Sixth Circuit.

Dec. 10, 1971.

Edward E. Davis, Dist. Atty. Gen., Chattanooga, Tenn., for respondent-appellant; David M. Pack, Atty. Gen. for the State of Tenn., Nashville, Tenn., on brief.

James D. Robinson, Chattanooga, Tenn. (Court appointed), for petitioner-appellee.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and CECIL, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

The sole issue presented by this appeal is whether the recent United States Supreme Court decision, Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L. Ed.2d 435 (1970), declaring an end to the "dual sovereignty" theory with respect to criminal prosecutions by the States, should be accorded retroactive application. That decision, hereinafter discussed in detail, reversed a state court judgment of conviction based on an offense which had been the basis of an earlier municipal court conviction. The District Court for the Eastern District of Tennessee granted appellee Robinson's petition for a writ of habeas corpus and held that Waller should be applied retroactively. Robinson v. Neil, 320 F.Supp. 894 (E.D.Tenn.1971)

The facts pertaining to the instant action are not complicated. In 1962, appellee was tried and convicted in the municipal court of three assault and battery offenses in violation of a Chattanooga, Tennessee ordinance, and was fined $50.00 and costs for each offense. Subsequently, he was named in three indictments charging assault with intent to commit first degree murder, arising out of the same facts resulting in the municipal convictions. Following arraignment in the state court of general jurisdiction, he pled guilty to each charge and received two consecutive sentences of two to ten years and one consecutive sentence of three to five years. He is presently confined in the Tennessee State Penitentiary, pursuant to the state court convictions.

In July, 1966, appellee filed a petition for writ of habeas corpus in the Criminal Court of Davidson County, Tennessee, contending that the state court convictions violated the double jeopardy guarantee in that they stemmed from the same facts and circumstances as his municipal court convictions. The petition was denied by the Criminal Court of Davidson County and the denial was affirmed by the Tennessee Supreme Court. In March, 1967, he filed a petition for habeas corpus relief in the District Court, advancing the double jeopardy argument. That court denied the petition on the ground that under Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L. Ed. 288 (1937), the Fifth Amendment double jeopardy provision was not applicable to the States through the Fourteenth Amendment. Robinson v. Hender-

son, 268 F.Supp. 349 (E.D.Tenn.1967), aff'd, 391 F.2d 933 (6th Cir. 1968). This court affirmed that determination by order dated April 10, 1968.

Soon thereafter, Palko v. Connecticut, *supra*, was overruled by the Supreme Court in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), which held that the Fifth Amendment double jeopardy provision is applicable to the States through the Fourteenth Amendment. With *Benton* as precedent, the Supreme Court granted certiorari in Waller v. Florida, *supra*, to test "the asserted power of [both a municipal court and a state court] within one State to place [a person] on trial for the same alleged crime." 397 U.S. at 390, 90 S.Ct. at 1186. As previously indicated, *Waller* held such multiple prosecutions to be violative of the Fifth Amendment, which leads us to the present case. In appellee's petition to the District Court, he stated that he had been tried and convicted by both the City of Chattanooga and the State of Tennessee for the same offense, and on authority of *Waller*, requested that his state conviction be overturned. *Waller*, however, left open the question of whether the rule announced therein is to be given retroactive effect, leaving us free to decide that issue on its merits.

The *Benton* decision making the double jeopardy provision applicable to the States has been given full retroactivity. The Supreme Court stated in a footnote in Ashe v. Swenson, 397 U.S. 436, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970), decided the same day as *Waller*, that: "There can be no doubt of the 'retroactivity' of the Court's decision in Benton v. Maryland. In North Carolina v. Pearce, 395 U.S. 711, [89 S.Ct. 2072, 23 L.Ed.2d 656,] decided the same day as *Benton*, the Court unanimously accorded fully 'retroactive' effect to the *Benton* doctrine."

397 U.S. at 437, 90 S.Ct. at 1191, n. 1.[1] Furthermore, this court reached the identical conclusion in Mullreed v. Kropp, 425 F.2d 1095 (6th Cir. 1970). *See also*, Booker v. Phillips, 418 F.2d 424 (10th Cir. 1969); and Galloway v. Beto, 421 F.2d 284 (5th Cir. 1970).

In finding retroactivity of the *Waller* rule in the instant case, the District Court placed great weight on the rationale of *Benton* and the rationale which was persuasive in making *Benton* retroactive.[2] The District Judge quoted a passage from Mr. Justice Marshall's opinion in *Benton*, which is illustrative of the long and cherished heritage enjoyed by the double jeopardy guarantee in our system of justice. Robinson v. Neil, *supra*, 320 F.Supp. at 897. The Court then made two observations: (1) "[T]he retroactivity of the *Benton* decision has been decided and that case has been held to be 'fully retroactive.' " and (2) "Waller v. Florida overrules no previous federal judicial precedent." From this, the Court concluded: "When the foregoing two observations are jointly considered, they appear to be tantamount to a prior adjudication upon the issue [of retroactivity] and to require that Waller v. Florida be given fully retroactive effect." Robinson v. Neil, *supra*, 320 F.Supp. at 898. While we agree that the purpose of the *Waller* rule is decisive of the issue of retroactivity in the present case, in our opinion the District Court herein was unduly swayed by the history and purpose of the double jeopardy guarantee applied to test *Waller*, rather than by the history and purpose of the *Waller* rule itself.

In Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Supreme Court established that the test of retroactivity is concerned with the purpose of the specific rule under consideration, rather than

---

1. The Court also stated that *Benton* has full retroactivity in a footnote in Price v. Georgia, 398 U.S. 323, 330–331, 90 S.Ct. 1757, 26 L.Ed.2d 300, n. 9 (1970).

2. Even though the Supreme Court has never given its rationale for making *Benton* retroactive, the District Court relied upon the rationale of our decision in Mullreed v. Kropp, *supra*, 425 F.2d 1095.

with the particular constitutional right involved:

> "We here stress that the choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved.
>
> \*     \*     \*     \*     \*     \*
>
> "We also stress that the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based \* \* \* [W]e must determine retroactivity 'in each case' *by looking to the particular traits of the specific 'rule in question.'*" 384 U.S. at 728, 86 S.Ct. at 1778. (Emphasis supplied.)

With this in mind we return to *Waller*. Petitioner, Joseph Waller, Jr., was arrested and charged in St. Petersburg, Florida, with violation of two city ordinances for taking a mural from the St. Petersburg City Hall and carrying it through the streets in a damaged condition. He was found guilty on both charges in the St. Petersburg Municipal Court and was sentenced to 180 days imprisonment. He was then tried and convicted on a charge of grand larceny for the same acts by the State of Florida and received a sentence of six months to five years, less 170 days of the 180 day municipal sentence.

Waller appealed to the District Court of Appeal of Florida, 213 So.2d 623 and that court upheld each of the convictions on the ground that under Florida precedent, trial and conviction for the same offense in both a municipal court and a state court does not constitute double jeopardy. Following denial of certiorari by the Florida Supreme Court, 221 So.2d 749, the United States Supreme Court granted certiorari and reversed his state court convictions.

In the Supreme Court, the State of Florida contended that municipalities and the State are separate sovereigns, permitting each to punish persons for the same crime. Florida argued that since the Supreme Court ruled in Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), that successive prosecutions by a state court and a federal court for the same crime are constitutionally permissible as punishment by separate sovereigns, the same result should follow for the municipality and the State. The Supreme Court rejected Florida's argument, indicating that such reliance upon *Bartkus* and *Abbate* and their predecessor, Fox v. Ohio, 5 How. 410, 12 L.Ed. 213 (1847), was erroneous. The Court cited Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), for the proposition that municipalities have never been considered separate sovereignties from the State, but rather are political subdivisions thereof. The Court stated:

> "[The proper analogy] is to be found in the relationship between the government of a Territory and the Government of the United States. The legal consequence of that relationship was settled in Grafton v. United States, 206 U.S. 333, [27 S.Ct. 749, 51 L.Ed. 1084] (1907) where [it was] held that a prosecution in a court of the United States is a bar to a subsequent prosecution in a territorial court, since both are arms of the same sovereign." 397 U.S. at 393, 90 S.Ct. at 1188.

Thereinafter, the *Waller* Court concluded:

> "Thus *Grafton*, not Fox v. Ohio, *supra*, or its progeny, Bartkus v. Illinois, *supra*, or Abbate v. United States, *supra*, controls, and we hold that on the basis of the facts upon which the Florida District Court of Appeal relied petitioner could not lawfully be tried both by the municipal government and by the State of Florida. In this context a 'dual sovereignty' theory is an anachronism, and the second trial constituted double jeopardy violative of the Fifth and Fourteenth Amendments to the United States Constitution.

"We decide only that the Florida courts were in error to the extent of holding that—

'even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court.'" 397 U.S. at 394–395, 90 S.Ct. at 1188–1189.

From this, it is readily apparent that the purpose of the *Waller* rule is to put an end to successive prosecutions by municipal and state governments based on the same offense and to establish for purposes of criminal prosecutions or whatever, that municipalities are political subdivisions of the States possessing a relationship similar to the relationship between the federal government and its territories. Though all States have some form of the double jeopardy guarantee, either constitutional, statutory or common law (Mullreed v. Kropp, *supra*, 425 F.2d at 1098), the *Waller* Court noted that nearly half of them permitted multiple prosecutions by municipalities and the State at the time of its decision. 397 U.S. at 391, 90 S.Ct. 1184, n. 3. Thus, *Waller* simply compelled the States to abandon the long tolerated practice of successive prosecutions based on standards of double jeopardy.

Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), requires that in resolving a retroactivity issue we must consider the purpose of the new rule, the reliance placed on the old rule, and the effect on the administration of justice of a retroactive application of the new rule. And in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), the Supreme Court stated that "Foremost among [the *Linkletter*] factors is the purpose to be served by the new constitutional rule." 394 U.S. at 249, 89 S.Ct. at 1033. The Court in *Desist* further stated " * * * we have relied heavily on the factors of the extent of reliance and consequent burden on the administration of justice only when the purpose of the rule in question did not

clearly favor either retroactivity or prospectivity." 394 U.S. at 251, 89 S.Ct. at 1035.

In both *Linkletter* and *Desist*, which involved the retroactivity of evidentiary exclusionary rules under the Fourth Amendment, the Supreme Court emphasized that the purpose of the new rules was to act as a deterrent to illegal police action and that such purpose would not be furthered, nor would past misconduct be corrected by releasing all the prisoners whose convictions were not in accordance with the Fourth Amendment. 394 U.S. at 249, 89 S.Ct. 1030. The prisoners involved, though victims of a constitutional violation, were admittedly guilty and the purpose of the rule would not be served by their release. 381 U.S. 637, 85 S.Ct. 1731.

In the most recent Supreme Court decisions on retroactivity, Williams v. United States, and Elkanich v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), involving the retroactivity of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), under the Fourth Amendment, and Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), involving the retroactivity of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), under the Fifth Amendment, the Court reiterated *Linkletter* and *Desist*, stating that the relevant inquiry is whether the rule is aimed at the fundamental fairness of the result of trials or is designed "to serve other ends." Williams v. United States, *supra*, 401 U.S. at 653, 91 S.Ct. 1148. The Court stated:

"The petitioners in both *Linkletter* and *Desist* were convicted in proceedings that conformed to all then-applicable constitutional norms. In both cases the government involved had a concededly guilty defendant in custody and substantial unsatisfied interests in achieving with respect to such defendant whatever deterrent and reha-

bilitative goals underlay its criminal justice system.

\* \* \* \* \* \*

"[T]he authorities violated neither of petitioner's rights either before or at trial. No claim [was] made that the evidence against them was constitutionally insufficient to prove their guilt." 401 U.S. at 654, 656, 91 S.Ct. at 1153, 1154.

The Court found that the circumstances in *Williams, Elkanich* and *Mackey* were similar to those in *Linkletter* and *Desist* and accordingly denied retroactivity.

It is readily apparent that, in the present case, the integrity of the fact-finding process at trial is not under attack by the new rule. The occurrence of multiple prosecutions in the context of the instant case did not result in the imprisonment of concededly innocent people. Thus, we can see no good reason for the adoption of a rule which would free persons subjected to such prosecutions in the past. If this were done, the convictions for relatively minor offenses carrying relatively minor penalties would be left standing, while convictions for the far more serious offenses carrying far more severe penalties would be overturned on a wholesale basis. Indeed, an injustice would be worked on the citizens of those States if we were to deny to the States the opportunity to exact whatever rehabilitative measures have been deemed proper for the convicted persons involved.

We conclude that the purpose of *Waller* will be properly served by granting the new rule prospective effect only. The States were mandated by that decision to revamp their criminal laws and procedures to conform with the constitutional requirements pursuant to the double jeopardy guarantee. This is all that is needed to implement sufficiently the new rule insuring abolition of the "dual sovereignty" theory, and its resulting allowance of multiple prosecutions.

In light of the foregoing, we need not discuss the remaining two factors, reliance on the old rule and effect on the administration of justice of retroactive application of the new rule. However, these factors too favor nonretroactivity and since they are closely related to the first factor, some comment on them is appropriate.

On reliance, we note first that until *Waller* the Supreme Court had never decided whether multiple prosecutions by a municipal court and the state court constitute double jeopardy. If the States were relying solely on Palko v. Connecticut, *supra,* holding the double jeopardy guarantee inapplicable to the States, such reliance would appear to have been unjustified. *See* Mullreed v. Kropp, *supra,* 425 F.2d at 1098–1099. But the States were also relying upon the "dual sovereignty" analogy between the municipal-state relationship and the state-federal relationship expounded in *Waller.* *See e. g.,* Theisen v. McDavid, 34 Fla. 440, 16 So. 321 (1894). This reliance proved unfounded, yet it cannot be said that it was clearly unjustified. As recently as 1967, a Louisiana District Court in Louisiana ex rel. Ladd v. Middlebrooks, 270 F.Supp. 295 (E.D.La.1967), upheld multiple prosecutions by municipalities and the State based on the "dual sovereignty" analogy to the state-federal relationship.

Other theories have been advanced to justify multiple prosecutions. *See Note,* 68 Mich.L.Rev. 336, 338 (1969). These theories argue, for example, that municipal offenses are too petty to be considered criminal prosecutions or that municipal interests and state interests are sufficiently different in their purposes as to require successive prosecutions. Though each of the theories may have been opposed by better reasoned arguments, the lack of federal law in this area prior to *Benton* and *Waller* left them open for some consideration and support.

As for the impact on the administration of justice by according *Waller* retroactivity, the District Court herein stated that at least two States (Tennessee and Washington), reported in a survey that they would be substantially ef-

fected and seven other States (Alaska, Iowa, Kansas, Louisiana, Ohio, South Dakota, and Florida), failed to report what effect it would have on them. Robinson v. Neil, *supra,* 320 F.Supp. at 899. With nine States possibly realizing a substantial effect and many others permitting multiple prosecutions, we think that, without more positive data, nonretroactivity is favored. In Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), the Supreme Court found nonretroactivity to be favored even though only six States were involved and data was not available to determine the actual number of cases effected within those six States. 382 U.S. at 417–418, 86 S. Ct. 459.

Reversed.