## ALLEN v. UNITED STATES.
### Nos. 26804, 26805.

United States District Court
N. D. Illinois, E. D.

Feb. 15, 1952.

Stanley A. Kaplan, Chicago, Ill., for petitioner.

Otto Kerner, Jr., U. S. Atty. for Northern District of Illinois, Chicago, Ill., for respondent.

CAMPBELL, District Judge.

The petitioner, presently incarcerated in the United States Penitentiary at Leavenworth, Kansas, pursuant to sentences imposed on February 15, 1933 in the above captioned matter, has filed a motion under Section 2255 of Title 28, United States Code, to vacate and set aside said sentences.

On February 15, 1933, petitioner was sentenced by the late Hon. Charles E. Woodward, Judge of the District Court of the United States for the Northern District of Illinois, Eastern Division, in case No. 26804, upon a plea of guilty, to serve five years on Count One of the indictment, five years on Count Two and five years on Count Three, all sentences to run consecutively; sentence was also imposed on petitioner on Counts Four and Five in the same indictment for five years each and two years on Count Six, all sentences in Counts Four, Five and Six to run concurrently with the sentence on Count One. This indictment charged petitioner with theft and possession of letters in violation of 18 U.S.C.A. § 317,[1] and with violation of 18 U.S.C.A. § 88,[2] conspiracy to violate the section previously mentioned. On the same day, petitioner was also sentenced by Judge Woodward in case No. 26805, on a similar postal theft charge, to a term of five years, which sentence was to run concurrently with the sentence on Count One in case No. 26804.

On May 14, 1942, petitioner was released on a conditional release from the aforesaid sentences. Thereafter, he was placed in custody by the State of Illinois authorities to serve the balance of a sentence previously imposed upon him prior to 1933. Petitioner was released by the Illinois authorities on August 7, 1945. After release from the Illinois penitentiary, Allen was arrested again for violation of the postal laws and, on September 24, 1946 on a plea of guilty, was sentenced to five years in the federal penitentiary at Leavenworth. On March 18, 1950, a warrant, charging petitioner as a conditional parole violator with respect to the February, 1933 sentences, was served upon him at the penitentiary in Leavenworth. Allen is presently serving the remainder of the February, 1933 sentences.

The principal ground urged by petitioner in his motion is that he was denied the assistance of counsel as guaranteed defendants in federal courts by the Sixth Amendment to the Constitution of the United States. Since this allegation, cast as it was in the framework of the facts surrounding it, created substantial issues of fact as to the events in which Allen participated, the Court ordered a hearing and required petitioner's production therefor. See the decision of the United States Supreme Court on January 7, 1952 in the case of United States v. Hayman, 72 S.Ct. 263. Counsel was appointed for the petitioner and a hearing was held, after which the matter was taken under advisement upon the briefs of the parties.

The evidence taken at the hearing reveals that Allen was arrested on January 25, 1933 in his hotel apartment in Chicago, Illinois at 3:00 A.M., by two postal inspectors and several city policemen. A Miss Myrtle Poe, who was present in the room at the time, was also arrested. The arresting officers proceeded to search the room thoroughly and found, in a closed drawer of a dresser, the letters which formed the basis for the subsequent indictments. No warrant of any kind was issued to the officers, nor was any warrant served upon defendant. Petitioner and Miss Poe were arraigned before the United States Commissioner on the afternoon of the same day. Subsequently, on February 6, they were arraigned before Judge Woodward, at which time they both pleaded not guilty. The matter again came up before Judge Woodward on February 15, at which time the case against Miss Poe was nolle prossed, and Allen pleaded guilty. It appears without contradiction that, at no time during this entire period, was Allen represented by an attorney or did he enjoy the benefit of advice of counsel. Miss Poe was represented by counsel, but apparently her counsel did not purport to represent Allen in any way. Petitioner testified that at no time was he told by the Commissioner, by the Assistant United States Attorney in charge of the case, or by Judge Woodward of his right to counsel, and at no time did any of these persons advise him that the court would appoint counsel for him at his request. Allen further testified that he was not aware that counsel would be appointed by the court for him if

1. 1948 revision, 18 U.S.C.A. §§ 1702, 1708.　　2. 1948 revision, 18 U.S.C.A. § 371.

he so requested, and that at no time did he consciously or intentionally waive or abandon the right to counsel.

At the time of trial, Allen was 37 years of age, and his formal education had terminated in the fifth grade in grammar school. He testified at the hearing that no one had explained the indictment to him and that he acted upon the assurance of the Assistant United States Attorney that the maximum sentence which could be imposed upon him for all of the offenses of which he was charged was a total of five years. He testified that, if he had understood that he was facing a sentence of the duration that was actually imposed, he would not have pleaded guilty, and he testified further that he attempted to raise an objection in court after sentence was actually imposed upon him, but to no avail.

Judge Woodward, Judge Woodward's then clerk, and Mr. Fisher, the Assistant United States Attorney in charge of the case, are all deceased. The written court records with respect to the proceedings before Judge Woodward on February 15, 1933 state only that Richard Allen on that date withdrew his plea of not guilty and pleaded guilty, but contain no statement, direct or indirect, that the court advised Allen of his right to counsel or that Allen waived such right in any specified manner. The court record is completely silent on this point. The proceedings before Judge Woodward on the day in question were brief—Allen testified that he was before the court for about ten minutes, in which respect he is corroborated by Postal Inspector T. G. Rowan who testified in this hearing. The latter was sincerely unable to recollect any conversation during the course of the 1933 proceedings in regard to Allen's right to counsel or an offer to provide him therewith.

■ The Sixth Amendment guarantees that "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." This is not a mere procedural formality, but constitutes a safeguard deemed necessary to insure fundamental human rights of life and liberty. The

Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not "still be done." Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 152, 82 L.Ed. 288. The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life and liberty unless he has or waives the assistance of counsel. The necessity for the protection of this right is aptly explained in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 64, 77 L.Ed. 158: "* * * right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him."

■■ In the instant case, the Government assumes the position that no relief can be granted in view of petitioner's failure to allege that he was innocent of the crimes with which he was charged and as a result of his failure to present his constitutional claim with due diligence. That these assertions are fallacious is abundantly clear from the decision of the Supreme Court in the case of Johnson v. Zerbst, 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, wherein it was stated:

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the

court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus. A judge of the United States—to whom a petition for habeas corpus is addressed— should be alert to examine 'the facts for himself when if true as alleged they make the trial absolutely void.'

"It must be remembered, however, that a judgment cannot be lightly set aside by collateral attack, even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of Counsel. If in a habeas corpus hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ."

It should be patent from the foregoing that it is not the function of this Court to concern itself, in a proceeding of this nature, with the guilt or innocence of the petitioner. A guilty person, in custody pursuant to a void judgment, is just as improperly deprived of his liberty as is an innocent person. As to the Government's remaining contention, i. e., that Allen did not assert his constitutional right with due diligence and, therefore, is not entitled to relief, the Court is unable to perceive its applicability. A void judgment is as void today as it was twenty years ago. No aging process, whereby a void judgment improves as to stature and validity by the passage of time, can properly be interposed. A person may be imprisoned only pursuant to a valid judgment; if he is not so imprisoned, he must be released.

 It remains to be determined, therefore, whether the petitioner has sustained the burden imposed on him of proving, by a preponderance of the evidence, that he did not competently and intelligently waive his constitutional right to assistance of counsel. At the hearing on the present motion, Allen stated unequivocally that he was not advised of his right to counsel, that he did not know that counsel would be appointed for him if requested, and that he did not at any time waive the right to counsel. Obviously, it was greatly to his advantage to so testify, but there was nothing in his demeanor on the witness stand indicating that he was not telling the truth. Furthermore, he was in no way contradicted either by the record of the 1933 proceedings or by evidence submitted by the Government in the hearing on the motion; both were completely devoid of any reference to assistance of counsel. Conceding, as the Government asserts, that a presumption of regularity attaches to any judgment of a court, it should be noted that Allen was convicted in 1933, some five years before the decision of the Supreme Court in Johnson v. Zerbst. In addition, it must be remembered that Allen was a man with very little formal education, and there is nothing to indicate that he had any knowledge of his legal or constitutional rights; and the mere fact that he had previously been convicted of a state offense is insufficient to impute such knowledge to him. After a careful review of all the evidence in the cause, the Court is of the opinion that the petitioner has met the required burden of proof and has proved, by a preponderance of the

evidence, that he neither had counsel nor properly waived his constitutional right to counsel.

·This conclusion is reached not without due consideration to the possibility or probability of attempted abuses of this process in the future. Such a prospect, however, cannot afford a rational basis for denying relief, in a proper case, to a person deprived of the rights guaranteed to him in our Constitution. Expediency can never justify suspension or limitation of those sacred rights by a Court whose prime duty is to uphold them.

For the foregoing reasons, petitioner's motion, as amended, to vacate and set aside the sentences imposed on February 15, 1933 in criminal cases Nos. 26804 and 26805 is granted and said sentences are hereby vacated and set aside. Prisoner discharged.