**Darrell Keith SANDERS, Plaintiff,**

v.

**Farouk AJIR, Arnold Brown, Betty Danforth, Leonard Fahien, June Dahl, Donald Fullerton, Paul Ginsberg, Stephen Sasso, a/k/a University of Wisconsin Police Officer # 14, Members of University of Wisconsin School of Medicine Promotions Committee I (1981), Members of University of Wisconsin School of Medicine Promotions Committee II (1982), Members of University of Wisconsin School of Medicine Educational Policy Council (1982), and Reginald Allen, Defendants.**

No. 82–C–508.

United States District Court,
W.D. Wisconsin.

Jan. 17, 1983.

---

Darrell Keith Sanders, pro se.

Bronson C. La Follette, Atty. Gen. by John R. Sweeney, Asst. Atty. Gen., Patience D. Roggensack, Madison, Wis., for defendants.

## DECISION AND ORDER

SHABAZ, District Judge.

This suit arises under 42 U.S.C. § 1983. Plaintiff, proceeding *pro se* and *in forma pauperis,* alleges that various incidents, culminating in his expulsion from medical school, violated his rights.

· The case is now before the Court on motions for summary judgment by all defendants. On the basis of the affidavits and exhibits submitted, the Court finds the following undisputed facts: [1]

## FINDINGS OF FACT

1. Plaintiff Darrell Keith Sanders entered the University of Wisconsin School of Medicine (UWSM) in June, 1979. At all times relevant to this case, defendant Reginald Allen was a student at UWSM, de-

fendant Paul Ginsberg was the Dean of Students at the University of Wisconsin, and defendant Stephen Sasso was employed as a police officer with the University of Wisconsin. All other defendants appear to have been members of the faculty or administration of UWSM during the events at issue.

2. On or about June 11, 1981, the Office of the Dean of UWSM sent plaintiff the following letter:

Promotions Committee I has reviewed your performance over the past two years, including the June 3, 1981 letter from Dean Ginsberg (of which you have received a copy), and the enclosed letter from Dr. Ann Evers. While taking cognizance of your strengths, the Committee was concerned about your low Grade Point Average, and what is perceived as a pattern of conflictual interpersonal relations with peers and faculty. Therefore, the Committee was unable to take immediate action promoting you to the Third Year.

In order to clarify these matters, and to try to bring about an improvement in the situation for you and others, the Committee has scheduled a meeting with you for Monday, June 22, 1981, at 1:00 p.m., in Room 115 Lorch Court. Since an adverse decision is a possibility, you may bring an advocate of your choice to this meeting. The Committee will utilize, in general, the criteria set forth in the attached document to evaluate your progress.

3. On or about June 15, 1981, defendant Leonard A. Fahien, Associate Dean at UWSM, rescheduled the meeting to June 29, 1981 at plaintiff's request.

4. On June 29, 1981, plaintiff appeared before the Promotions Committee I (Pro Com I). The proceedings were tape-recorded and detailed minutes were kept. Plain-

[1]. In certain cases, the facts recited herein conflict with the allegations in plaintiff's complaint. On a motion for summary judgment, however, "an adverse party may not rest upon the mere allegations or denials of his pleading," but is instead required to set forth specific facts showing a "genuine issue for trial." Rule 56(e)

Federal Rules of Civil Procedure. Although given the opportunity, plaintiff filed no affidavits in opposition to those filed by defendants. It should be noted, however, that only those facts in Paragraphs 17 and 18 conflict with the allegations in plaintiff's complaint. *See* Part III.

tiff was told of the various problems with his academic performance, including a low grade point average and conflict with medical school peers and others. Plaintiff then presented his interpretation of the events and his performance and discussed his situation with various members of Pro Com I.

Thereafter, Pro Com I went into closed session. It decided, after deliberation, to expel plaintiff on the basis of: "1) marginal academic performance; 2) marginal to inadequate performance in the Introduction to Clinical Medicine course; and 3) no evidence that Mr. Sanders had responded positively to the letters of warning and repeated efforts for counseling by the Medical School and Dean Paul Ginsberg's office." The vote was seven in favor and three opposed.

On July 2, 1981, defendants June L. Dahl and Mr. Fahien wrote plaintiff the following letter, specifying the reasons for his dismissal and his right to appeal that decision:

> We regret to inform you that at its meeting on June 29, 1981, Promotions Committee I voted to expel you from the University of Wisconsin Medical School. Since you have not been promoted to the third year, you cannot appear on the wards on July 6, 1981. The Committee's decision was based on your marginal academic performance during the first two years of Medical School, your marginal-to-inadequate performance in the Introduction to Clinical Medicine course and on the fact that there is no evidence that you have responded positively to the letters of warning from the Medical School and to repeated efforts for counseling by the Medical School and Dean Paul Ginsberg's office.

> You have the right to appeal this Promotions Committee decision. The appeal must be submitted, in writing, to the Dean within thirty days of receipt of this letter. The appeal will be heard by the Educational Policy Council at a meeting chaired by the Dean, as expeditiously as possible and no later than fifteen days after receipt of your written appeal.

> You have the right to address the Educational Policy Council and to bring a spokesman. The Council will excuse you, your spokesman and student members of the Educational Policy Council and go into closed session to take action on your case. Any member of the Educational Policy Council who voted on your case as a member of Promotions Committee I will not vote on your appeal.

> If you have questions about the Committee's decision or the appeal procedure, please feel free to contact us.

6. On July 13, 1981, plaintiff wrote to defendant Arnold Brown, Dean of UWSM, to indicate his intention to appeal his dismissal to the Educational Policy Council (EPC).

7. On July 15, 1981, defendant Brown informed plaintiff that the EPC would hear his appeal on July 23, 1981.

8. On July 23, 1981, plaintiff presented his appeal to the EPC. Plaintiff spoke and had the opportunity to present evidence on his behalf. Plaintiff also answered the questions of EPC members. Detailed minutes were kept. After plaintiff was excused, those present at the meeting discussed the appeal. Defendant Brown summarized the disposition of the appeal in a letter to plaintiff dated July 30, 1981:

> I am notifying you officially of the action of the Educational Policy Council concerning your appeal of the action of Promotions Committee I regarding your continuance in the Medical School.

> Two motions were passed concerning your appeal. The first was as follows: "The decision of Promotions Committee I concerning Darrell Sanders is not approved." This passed unanimously.

> The second motion which was also passed unanimously, is as follows: "The Committee recommends to Drs. Bamforth and Fahien the establishment of an appropriate third year curriculum for Mr. Sanders based upon a remedial program in Introduction to Clinical Medicine. It is also recommended that a report to the Educational Policy Council on Mr. Sanders' progress be made no later than October 1,

1981. It is further recommended to Mr. Sanders that he seek psychiatric counseling."

All of us on the Educational Policy Council are confident that our action is in your and the School's best interest. We assume and have no doubts that you will be cooperating fully with Drs. Bamforth and Fahien and we look forward to a positive report of your progress.

9. On March 11, 1982, in the absence of plaintiff, the Promotions Committee II (Pro Com II) met to discuss plaintiff's performance. On or about the next day, defendant Fahien sent plaintiff the following note:

As I told you on the telephone on March 12, 1982, Promotions Committee II reviewed your clinical evaluations for this year and voted to have you removed immediately from all clinical activity until you can have a hearing with this Committee. The evaluations will be sent to you as soon as possible. It is my understanding that it will be about two weeks before we can have a quorum for this meeting.

10. On March 25, 1982, defendant Fahien supplemented the note of March 12, 1982 with the following letter:

Re: Review of Clinical Performance

On March 11, 1982, the Promotions Committee met to consider your progress. The Committee considered the evaluations of your performance during clinical rotations since the beginning of your third year.

The Committee has become very concerned that you may be unable to complete the clinical aspects of your medical education.

Enclosed are the evaluations of your rotations since August, 1981.

You have failed the examination in medicine. While you have received passing clinical grades, there has been a disturbing pattern of comments and incidents involving your basic ability, your attitude and judgment, unexcused absences and your ability to work with others. In addition, your treatment of patients during several recent incidents, described in the attached materials, has been insensitive and in some instances, bizarre.

You should also be prepared to explain your participation in counselling assistance. In spite of the clear recommendation of the Educational Policy Committee in permitting you to continue in school on July 23, 1981, we understand from the letter from Dean Ginsberg you have not obtained regular counselling and are not now involved in any form of professional counselling assistance.

None of these factors is sufficient in itself to produce the level of concern felt by the Committee. However, in view of your past difficulties, a cumulative assessment of your performance reflects a most disturbing pattern. In addition, matters seem to be getting worse rather than better.

A meeting is scheduled for Promotions Committee II in Room 1210 MSC, 1300 University Avenue, on Thursday, April 1, 1982 at 7:30 P.M. to discuss these problems with you. You are welcome to bring a spokesman with you to the meeting.

11. On April 1, 1982, plaintiff appeared before Pro Com II. The proceedings were tape-recorded and minutes were kept. Plaintiff was told of the various problems with his academic performance, including a failed examination in medicine and low grades in orthopedics, and questions about plaintiff's competence, attitude, judgment and ability to work with others. Plaintiff presented his interpretation of the events about which the members of Pro Com II were most concerned. Plaintiff discussed his performance with various members of Pro Com II and requested a leave of absence from UWSM.

Thereafter, Pro Com II excused plaintiff and heard from certain guest physicians who had observed plaintiff during his rotations. After these physicians were excused, Pro Com II unanimously voted to expel plaintiff from UWSM.

12. On or about April 7, 1982, defendant Ernest C. Borden officially notified plain-

tiff of the action of Pro Com II with this letter:

At its meeting on April 1, 1982, Promotions Committee II voted to dismiss you from the University of Wisconsin School of Medicine. This decision was based upon your marginal academic performance and repeated instances of conflictual interaction with faculty, patients, peers and staff.

The Committee took this action with a sense of regret. However, poor performance in both pre-clinical and clinical disciplines and the pattern of recurring difficulties in interacting with others made the action necessary.

You may appeal this decision to the Educational Policy Council within thirty days by writing to Dean Arnold Brown. A meeting must be held within fifteen days after his receipt of your letter. Members of Promotions Committee II who voted on April 1, 1982, and are also members of the Educational Policy Council, cannot vote at this meeting.

13. On May 3, 1982, plaintiff notified defendant Brown that he wished to appeal this decision to the EPC. On May 5, 1982, plaintiff submitted for the consideration of the EPC a three-page letter, a two-page document entitled "History" and a three-page document entitled "Incident Report." The submissions were intended to convince the EPC to reverse the decision of Pro Com II.

14. On May 10, 1982, plaintiff requested that the fifteen-day deadline for appeal of the Pro Com II decision be waived because of scheduling conflicts of plaintiff's spokesperson. This request was granted the next day.

15. On May 24, 1982, plaintiff appeared before the EPC to supplement the written material already submitted. Plaintiff and his spokesperson both addressed the EPC. Plaintiff then answered the questions of EPC members. Minutes of the proceedings were kept.

Plaintiff and his spokesperson were then excused, and the EPC met in closed session. After discussion, the EPC rejected plain-

tiff's request for a leave of absence and unanimously approved the denial of the appeal.

16. Defendant Brown formally informed plaintiff that his appeal had been denied by letter dated May 26, 1982.

17. On or about February 23, 1982, while on duty, defendant Sasso was summoned to the University Union on a complaint involving plaintiff. Several witnesses alleged that plaintiff had knocked down another student for no apparent reason. After taking the statements of the purported victim and a witness to the incident, defendant Sasso warned plaintiff that if plaintiff continued to cause trouble at the Union, defendant Sasso would remove him from the building and, if necessary, take him to jail. Defendant Sasso at no time was aware of plaintiff's religious beliefs or sexual orientation.

18. This incident was not the first time Sanders' conduct had been brought to the attention of the University Police.

## CONCLUSIONS OF LAW

The merits of plaintiff's complaint against each group of defendants will be examined separately.

### I. *Reginald Allen*

■ Plaintiff alleges in his amended complaint that defendant Reginald Allen is a resident of the City of Madison; that defendant Allen is a student at the University of Wisconsin School of Medicine (UWSM); that defendant Allen wrote a "falsified, malicious and slanderous statement" against him in December, 1980; that this letter led to a meeting of the UWSM Promotions Committee I (Pro Com I), at which plaintiff was expelled; and that defendant Allen sexually insulted, assaulted and harassed plaintiff.

Assuming that the foregoing is true, plaintiff cannot seek relief against defendant Allen in this Court. Even construed liberally, the events alleged do not permit the inference that plaintiff has been deprived of any constitutional or federal stat-

utory rights by Mr. Allen. As plaintiff has stated no federal cause of action against defendant Allen, any state claims must be dismissed as well. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## II. *Paul Ginsberg*

Plaintiff alleges 1) that defendant Paul Ginsberg, Dean of Students at the University of Wisconsin, attempted to and did extract information about plaintiff's mental state from plaintiff's physicians, Dr. Richard Thurrell; 2) that defendant Ginsberg wrote a "falsified and malicious, capricious, discriminatory letter" to defendant Leonard Fahien on March 9, 1982; and 3) that this letter caused plaintiff to be expelled from medical school on April 1, 1982.

■ Liberally construed, the first allegation states no claim for relief under federal law. The Court is aware of no federal statute or constitutional provision preventing such alleged efforts at acquiring confidential medical information. The principles supporting a constitutional right to privacy do not apply in this case. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) and *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) established "zones" of privacy within which the government may not intrude. The Supreme Court has not suggested, however, that the doctor-patient relationship is within these zones.

> [T]he personal rights found in this guarantee of personal privacy must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty" as described in *Palko v. Connecticut,* 302 U.S. 319, 325 [, 58 S.Ct. 149, 152, 82 L.Ed. 288] (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protection—matters relating to marriage, procreation, contraception, family relationships, and child rearing and education.

*Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).

■ Plaintiff's second allegation, which may state a claim for defamation, a state law tort, must be heard in state court. Plaintiff's third allegation and others related to his expulsion from medical school will be considered in Part IV of this Decision.[2]

## III. *Stephen Sasso*

■ Plaintiff alleged that defendant Stephen Sasso, a police officer with the University of Wisconsin, threatened plaintiff with "capital, bodily punishment and harm" as a "punitive measure because of plaintiff's religious beliefs, racial ancestry and heterosexual orientation." According to defendant Sasso's affidavit and report of the incident, which plaintiff failed to contest through counter-affidavit or other evidence, no such threat was made. Instead, plaintiff was informed of the consequences of further altercations in the Union. *See* ¶ 17. Defendant Sasso, while certainly aware of plaintiff's race, did not know of plaintiff's religious beliefs or sexual orientation.

The Court cannot conclude from the foregoing that defendant Sasso violated any of plaintiff's rights under the Constitution or laws of the United States. Even if a violation might be reasonably inferred from the facts found by the Court, defendant Sasso appears to have acted in good faith within the meaning of *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396. Indeed, the rationale of *Harlow* is particularly appropriate in this case: "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Bare allegations are all that plaintiff has placed before the Court, failing to support charges of constitutional violations by defendant Sasso by reference to the facts.

---

**2.** To the extent plaintiff stated claims for relief under state law against defendant Ginsberg, such claims must be dismissed where, as here, all federal claims are dismissed prior to trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 716, 86 S.Ct. 1130, 1134, 16 L.Ed.2d 218 (1966).

■ Summary judgment must be awarded to defendant Sasso.[3]

## IV. *All Other Defendants*[4]

Plaintiff alleges that those participating in his expulsion from medical school violated his rights. Construing the complaint liberally, plaintiff appears to claim that the events culminating in his expulsion violated his right to due process of the laws and to equal protection of the laws.[5] These grounds will be examined separately.

A. *Due Process:* Plaintiff asserts that the events leading up to his expulsion from medical school infringed his rights under the Due Process Clause of the Fourteenth Amendment. The Court's decision is controlled by *Board of Curators of the Univ. of Missouri v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). In *Horowitz,* a first-year medical student was dismissed from the University of Missouri-Kansas City Medical School for failure to meet academic standards. Specifically, the school found that the student performed below the level of her peers in clinical rotations, that she was erratic in her attendance, and that she lacked sufficient concern for personal hygiene. The Council on Evaluation, a faculty-student body which evaluates each medical student on a periodic basis, recommended that the student be dropped from the medical school. Instead, she was permitted to take a series of oral and practical examinations. After reviewing the latest evaluations of her work, the Council reaf-

firmed its decision to recommend that the student be expelled. This recommendation was approved, in turn, by a faculty committee and by the Dean. The student then appealed the decision to the Provost for Health Sciences, who sustained the school's actions. *Id.* at 80–82, 98 S.Ct. at 950–51.

The student then filed suit in federal court, alleging that she did not receive procedural due process prior to her dismissal. On appeal, the Supreme Court held that the student was accorded all rights due her under the Due Process Clause of the Fourteenth Amendment.[6]

■ In this case, the procedural protections afforded to plaintiff prior to his expulsion went far beyond that embraced by the Supreme Court in *Horowitz.* Like the student in *Horowitz,* plaintiff was permitted a chance to prove himself after an initial determination had been made to expel him. *See* Findings of Fact ¶ 8. Once Pro Com II determined that plaintiff had not sufficiently improved his performance in March, 1982, plaintiff received the following procedural protections, the majority of which were not available to the student in *Horowitz:*

Plaintiff was given notice of the possible grounds for expulsion and copies of all of his evaluations in advance of his hearing; Plaintiff was permitted to submit written material and to speak to Pro Com II in person and through an advocate of his choice;[7]

3. To the extent plaintiff stated claims for relief under state law against defendant Sasso, such claims must be dismissed where, as here, all federal claims are dismissed prior to trial. *United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139.

4. Any role that defendants Ginsberg, Allen or Sasso may have played in plaintiff's expulsion from medical school is also considered here.

5. To the extent plaintiff has stated a claim for relief under state law against these defendants, such claims must be dismissed where, as here, all federal claims are dismissed prior to trial. *United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139.

6. Although Justice Rehnquist, writing for the Court, only attracted the endorsement of three

other justices, all justices approved Justice Rehnquist's statement that "[a]ssuming the existence of a liberty or property interest, [the student] has been awarded at least as much due process as the Fourteenth Amendment requires." 435 U.S. at 84 85, 98 S.Ct. at 952. *See* 435 U.S. at 96, 98 S.Ct. at 958 (White, J., concurring in part and concurring in the judgment); 435 U.S. at 97, 98 S.Ct. at 958–59 (Marshall, J., concurring in part and dissenting in part); 435 U.S. at 108 109, 98 S.Ct. at 964 (Blackmun, J. and Brennan, J., concurring in part and dissenting in part.)

7. *Cf. Horowitz,* 435 U.S. at 78, 98 S.Ct. at 949: "Students are not typically allowed to appear before either the Council [on Evaluation, a student-faculty body] or the Coordinating Committee [a faculty review committee] on the oc-

The proceedings were tape-recorded and minutes were kept;

Plaintiff was informed in writing of the reasons for the decision of Pro Com II to expel him;

Plaintiff had a right to appeal the decision to the EPC;[8]

Plaintiff was permitted to submit additional written materials and to speak to the EPC in person and through an advocate of his choice;

Minutes of the proceedings were kept; and

Plaintiff was informed in writing of the decision of the EPC.

These procedural protections far exceed those required in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), for disciplinary proceedings in connection with the suspension of the student, a standard which at least a plurality of the Supreme Court insists is not required for "academic" rather than disciplinary expulsions. *Horowitz,* 435 U.S. at 89–90, 98 S.Ct. at 955. Thus, whether the expulsion be characterized as disciplinary or academic, plaintiff received the full protection of the Due Process Clause of the Fourteenth Amendment.[9]

■ B. *Equal Protection:* Although plaintiff continued to reiterate his charges that the decision to expel him was based upon bias and discriminated against him because of his race, religion, and sexual orientation, he failed to set forth any facts in support of that charge. Therefore, the Court finds no disputed material facts for resolution at trial on this claim.

CONCLUSION

The Court finds no constitutional or statutory violation in the events leading up to plaintiff's expulsion from medical school. In fact, in recognition of its legal responsibilities to students, UWSM established an elaborate and complete hearing process. This process secured plaintiff's due process rights, while also (not coincidentally) increasing the likelihood of wise decisions. Once the Court is certain that plaintiff's rights under federal law have not been infringed, however, the wisdom of the decision itself must rest in the discretion of those responsible for plaintiff's medical training.

ORDER

IT IS ORDERED that the motions of all defendants for summary judgment are GRANTED. The Clerk of Court is directed to enter judgment in favor of the defendants and against the plaintiff, dismissing the complaint with prejudice and with costs.

In light of the foregoing,

IT IS FURTHER ORDERED that defendants' motions to compel and to strike interrogatories are DENIED.

---

casion of their review of the student's academic performance."

8. The deadline for appeal was waived at plaintiff's request.

9. If the Court were to find that plaintiff was denied due process of the laws in connection with his expulsion from medical school, defendants would be entitled to good faith immunity. Where the conduct of government officials performing discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," such officials are shielded from liability. *Harlow v. Fitzgerald,* —·· U.S. ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The Court notes the uncontested affidavit of Edward J. Krill, attorney for the Center of Health Sciences of the University of Wisconsin-Madison. At the request of the Dean of UWSM, Mr. Krill reviewed the policies and procedures for academic performance, the evaluation of that performance, and the procedures to be followed by Pro Com I, Pro Com II, and the EPC. Mr. Krill attended the hearing on May 24, 1982 to provide advice to the EPC and to make certain that Mr. Sanders was afforded all appropriate procedural protections. Under the circumstances, defendants' reliance on Mr. Krill's advice established their good faith defense. *See Huebschen v. Dep't. of Health and Social Services,* 547 F.Supp. 1168, 1178 (W.D. Wis.1982).