ALDERMAN, Chief Justice.
Applicant seeks review of a ruling by the Board of Bar Examiners refusing to process his application for admission to The Florida Bar until he answers item 28(b) of the applicant’s questionnaire and affidavit and until he executes the authorization and release form required by the Rules of the Supreme Court Relating to Admissions to the Bar. Applicant maintains that the Board’s action violates his right of privacy and his right to due process, of law guaranteed by the Florida and United States Constitutions, and his rights guaranteed by section 90.503, Florida Statutes (1981), and article I, section 2 of the Florida Constitution. We find no merit to his contentions and approve the decision of the Florida Board of Bar Examiners requiring applicant to complete all portions of the questionnaire, including item 28(b), and to execute an unaltered authorization and release form before the Board will process his application for admission to The Florida Bar.
Applicant applied for admission to The Florida Bar in April 1982 by submitting application for admission form No. 1 and a modified authorization release. On his authorization release, he included a proviso that his release did not apply to his medical records. On his application, he expressly declined to answer question 28(b) on the basis that it violates his constitutional rights. In answering the questionnaire, the applicant disclosed under item 12 that he had served on active duty with the United States Marine Corps and that he had not been discharged, but rather had been transferred to a temporary retired list for medical reasons and later had been retired.
Item 28(b) asks:
*73 Have you ever received REGULAR treatment for amnesia, or any form of insanity, emotional disturbance, nervous or mental disorder? _
Yes or No
If yes, please state the names and addresses of the psychologists, psychiatrists, or other medical practitioners who treated you. (Regular treatment shall mean consultation with any such person more than two times within any 12 month period.)[1]
The authorization and release form provided by the Board in compliance with the rules of admission states:
I,_, having filed an application with the Florida Board of Bar Examiners and fully recognizing the responsibility to the Public, the Bench, and the Bar of this State lodged with the Florida Board of Bar Examiners by the Supreme Court of Florida under the Constitution of the State of Florida to determine that only those of high character and ability are admitted to The Bar of Florida, hereby authorize and request every medical doctor, school official, and every other person, firm, officer, corporation, association, organization or institution having control of any documents, records or other information pertaining to me relevant to my good moral character and fitness to perform the responsibilities of an attorney, to furnish the originals or copies of any such documents, records and other information to said Board, or any of its representatives, and to permit said Board, or any of its representatives, to inspect and make copies of any such documents, records and other information including but not limited to any and all medical reports, laboratory reports, X-rays, or clinical abstracts which may have been made or prepared pursuant to, or in connection with, any examination or examinations, consultation or consultations, test or tests, evaluation or evaluations, of the undersigned.
I hereby authorize all such persons as set out above to answer any inquiries, questions, or interrogatories concerning the undersigned which may be submitted to them by the Florida Board of Bar Examiners or its authorized representative, and to appear before said Board, or its authorized representative, and to give full and complete testimony concerning the undersigned, including any information furnished by the undersigned. I hereby relinquish any and all rights to said reports, including but not limited to clinical abstracts, consultations, evaluations, or any other information incident in any way to cooperation with the Florida Board of Bar Examiners, or its authorized representative, and fully understand that I shall not be entitled to have disclosed to me the contents of any of the foregoing.
I hereby release and exonerate every medical doctor, school official, and every other person, firm, officer, corporation, association, organization or institution which shall comply in good faith with the authorization and request made herein from any and all liability of every nature and kind growing out of or in anywise pertaining to the furnishing or inspection of such documents, records and other information or the investigation made by said Florida Board of Bar Examiners. The undersigned further waives absolutely any privilege_he may have relevant to h__ good moral character and fitness to perform the responsibilities of an attorney under Sections 90.-242 and 490.32, Florida Statutes.
(Emphasis supplied.)
The executive director of the Board, on behalf of the Board, advised the applicant that processing of his application would be withheld for ten days pending receipt of an executed and unaltered authorization and release and a response to question 28(b). *74 More correspondence between the Board and the applicant ensued for several months, concluding in the Board’s decision not to process his application until he complied with the requirements of the Board.
Applicant seeks review of the Board's refusal to process his application and initially contends that to require him to answer question 28(b) and to submit an unconditional authorization and waiver violates his constitutional right of privacy under the Florida and United States Constitutions.
Article I, section 23 of the Florida Constitution provides:
Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public’s right of access to public records and meetings as provided by law.
Applicant concedes and we agree that this constitutional provision was not intended to provide an absolute guarantee against all governmental intrusion into the private life of an individual.
Preliminarily, we must determine whether the requirement that applicant answer item 28(b) and execute the authorization and release falls within the governmental intrusion as contemplated by article 1, section 23, and, if so, we must decide whether this intrusion violates the applicant’s constitutional right of privacy. The action of the Board clearly is not within the exception proviso of article I, section 23.[2] It is just as evident that the Board’s action does constitute governmental action. The exclusive jurisdiction to regulate admission of persons to the practice of law is vested in this Court. Art. V, § 15, Fla. Const. We established the Florida Board of Bar Examiners as an arm of this Court to assist us in this function.
We also find that the applicant’s right of privacy is implicated by item 28(b) and the authorization and release form which allow a limited intrusion into his private life. The extent of his privacy right, however, must be considered in the context in which it is asserted and may not be considered wholly independent of those circumstances. He has chosen to seek admission into The Florida Bar. He has no constitutional right to be admitted to the Bar. Rather, the practice of law in this state is a privilege. State ex rel. The Florida Bar v. Evans, 94 So.2d 730 (Fla.1957). In this case, the applicant’s right of privacy is circumscribed and limited by the circumstances in which he asserts that right. By making application to the Bar, he has assumed the burden of demonstrating his fitness for admission into the Bar. Fla. Sup.Ct. Bar Admiss. Rule, art. Ill, § 2. This encompasses mental and emotional fitness as well as character and educational fitness.
Although circumscribed and limited by the context in which it is asserted, the applicant does have a right of privacy, and we must determine whether it has been unconstitutionally intruded upon by the Board’s requirements. We have not yet decided a case in which we have had to determine the appropriate standard of review in assessing a claim of unconstitutional governmental intrusion into one’s privacy rights under article I, section 23. We need not make that decision in the present case since we find that the Board’s action meets even the highest standard of the compelling state interest test.
The compelling state interest or strict scrutiny standard imposes a heavy burden of justification upon the state to show an important societal need and the use of the least intrusive means to achieve that goal. Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); In re Estate of Greenberg, 390 So.2d 40 (Fla.1980).
*75 Applicant concedes and we agree that the state’s interest in ensuring that only those fit to practice law are admitted to the Bar is a compelling state interest. He admits that there is a legitimate need for the intrusion. His concern is not with the end sought to be achieved by the Board but is rather with the means employed by the Board to fulfill its responsibilities. He asserts that the authorization and release form and item 28(b) are unnecessarily over-broad and suggests that there should be some time limitation relative to the information sought.
That the state has a compelling state interest in regulating the legal profession has been expressly recognized by the Supreme Court of the United States. In Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), that Court said:
[A]s part of their power to protect the public health, safety, and other valid interests [states] have broad power to establish standards for licensing practitioners and regulating the practice of profes-sions_ The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice and have historically been “officers of the courts.”
421 U.S. at 792, 95 S.Ct. at 2016.
In charging the Board with the duty to determine the character and fitness of applicants to The Florida Bar, we have required that:
Prior to recommending an applicant for admission to practice the profession of law in Florida, the Florida Board of Bar Examiners shall conduct an investigation and otherwise inquire into and determine the character, fitness, and general qualifications of every applicant. In every such investigation and inquiry, the Board may obtain such information as bears upon the character, fitness, and general qualifications of the applicant and take and hear testimony, administer oaths and affirmations, and compel, by subpoena, the attendance of witnesses and the production of books, papers and documents. Any member of the Board may administer such oaths and affirmations. Such investigations and inquiries shall be informal, but they shall be thorough, with the object of ascertaining the truth. Technical rules of evidence need not be observed. Any investigative hearing for such purpose may be held by a division of the Board consisting of not less than three members of the Board. Each division shall record its proceedings and shall report its decisions to the full Board. Formal hearings held in re- ' sponse to Specifications shall be conducted before a quorum of the Board which shall consist of not less than five members.
Fla.Sup.Ct. Bar Admiss. Rule, art. Ill, § 3(a). It is imperative for the protection of the public that applicants to the Bar be thoroughly screened by the Board. Necessarily, the Board must ask questions in this screening process which are of a personal nature and which would not otherwise be asked of persons not applying for a position of public trust and responsibility. Because of a lawyer’s constant interaction with the public, a wide range of factors must be considered which would not customarily be considered in the licensing of tradesmen and businessmen. The Florida Bar, Petition of Rubin, 323 So.2d 257 (Fla. 1975). The inquiry into an applicant’s past history of regular treatment for emotional disturbance or nervous or mental disorder requested by item 28(b) furthers the legitimate state interest since mental fitness and emotional stability are essential to the ability to practice law in a manner not injurious to the public. The pressures placed on an attorney are enormous and his mental and emotional stability should be at such a level that he is able to handle his responsibilities.
We find that the Board has employed the least intrusive means to achieve its compelling state interest. The information sought by item 28(b) is vital to the Board in evaluating an applicant’s fitness. To ensure that it has all of the information necessary for its evaluation, the Board *76 rather than the applicant must be the judge of what part of the applicant’s past history is relevant.
There is no precise list of medical conditions that may affect a person’s fitness to practice law and no uniformity among-people who suffer from these conditions. The means employed by the Board cannot be narrowed without impinging on the Board’s effectiveness in carrying out its important responsibilities. A time limitation on the information sought could preclude the Board from obtaining vitally relevant information which could impact on its decision as to an applicant’s mental and emotional fitness to practice law. The fact that the information obtained in response to the Board’s inquiry is held in confidence by the Board and by this Court minimizes the intrusion on an applicant’s privacy. Additionally, the authorization and release form, contrary to applicant’s assertion, is not a blanket release but rather is expressly limited to information relevant to an applicant’s “good moral character and fitness to perform the responsibilities of an attorney.” We hold that the Board’s action does not violate article I, section 23 of the Florida Constitution.
We also hold that the Board’s action does not violate applicant’s federal constitutional right of privacy. In view of our disposition of this first issue, it is unnecessary for us to address, in any detail, applicant’s claim that his federal constitutional privacy rights were violated. The threshold question for our analysis of that claim would be to determine which zone of privacy applicant’s asserted privacy rights fell within. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). If we were to conclude they fell within the decision-making or autonomy zone of privacy interests we would be required to apply the compelling state interest test. The privacy interests encompassed within this zone of privacy are only those which are fundamental or implicit in the concept of ordered liberty. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). These are matters relating to marriage, procreation, contraception, family relationships and child rearing, and education. Paul v. Davis; Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc., 379 So.2d 633 (Fla.1980). The other privacy interests described by the Supreme Court of the United States in Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1976), and Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), involve one’s interests in avoiding public disclosure of personal matters. In this area, a balancing test has been held to be the appropriate standard of review— comparing the interests served with the interests hindered. See Plante v. Gonzalez, 575 F.2d 1119 (5th Cir.1978).
Even applying the highest standard of review, we have already decided that the Board has demonstrated a compelling state interest and use of the least intrusive means to achieve that interest.
We likewise find no merit to applicant’s claim that the Board’s challenged action violates his right to due process of law or that it violates his rights guaranteed by article I, section 2 of the Florida Constitution, which provides in pertinent part that no person shall be deprived of any right because of physical handicap.
Finally, applicant asserts that the refusal by the Board to process his application under the present facts violates his rights under section 90.503, Florida Statutes (1981). This statutory provision provides in pertinent part:
(1) For purposes of this section:

(c) A communication between psychotherapist and patient is “confidential” if it is not intended to be disclosed to third persons other than:

(4) There is no privilege under this section:

(c) For communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in *77 which he relies upon the condition as an element of his claim or defense ....
In response to applicant’s reliance on the psychotherapist-patient privilege, we once again point out that it is applicant himself who placed his mental and emotional fitness as well as his moral and educational fitness in issue when he filed his applicant’s questionnaire and affidavit, a preliminary step in seeking admission to practice law in Florida. Under section 90.503(4)(c), there is no privilege “[f]or communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense.”
Accordingly, we approve the ruling of the Florida Board of Bar Examiners requiring applicant to answer item 28(b) and to file an unaltered authorization and release form. Until that time, the Board is fully warranted in not processing his application.
It is so ordered.
BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., dissents with an opinion.

. By letter dated August 23, 1982, the executive director of the Board advised applicant that question 28(b) was reviewed at a recent Policy Session of the Board, and the number of visits to a psychologist, psychiatrist, or other medical practitioner was raised to four times in any twelve-month period.

. The exception proviso of article I, section 23, states: "This section shall not be construed to limit the public’s right of access to public records and meeting as provided by law."