816 F.2d 539
 55 USLW 2588, 2 Indiv.Empl.Rts.Cas. 51
 Greg GRUSENDORF, Plaintiff-Appellant,
v.
CITY OF OKLAHOMA CITY, a municipal corporation; Jimmy R.
Catledge, Fire Chief, City of Oklahoma City; Paul Benson,
Assistant Fire Chief, City of Oklahoma City and John D.
Parasich, Assistant Training Officer, City of Oklahoma City,
Defendants-Appellees.
 No. 85-1807.
 United States Court of Appeals,
Tenth Circuit.
 April 17, 1987.
 
 Steven M. Angel of Hughes & Nelson, Oklahoma City, Okl., for plaintiff-appellant.
 Diane Davis Huckins, Asst. Mun. Counselor (Robert D. Allen, Mun. Counselor, with her on the brief), Oklahoma City, Okl., for defendant-appellee, City of Oklahoma City, Okl.
 Richard C. Smith, Asst. Mun. Counselor, Oklahoma City, Okl., for defendants-appellees, Catlege, Benson and Parasich.
 Before BARRETT and TACHA, Circuit Judges, and JENKINS,* District Court Judge.
 BARRETT, Circuit Judge.
 
 
 1
 On December 14, 1984, appellant Greg Grusendorf took three puffs from a cigarette while on a lunch break from his job as a firefighter trainee with the Oklahoma City Fire Department. He was fired that afternoon by his supervisor on the grounds that he had violated the terms of an agreement he signed as a precondition of employment that he would not smoke a cigarette, either on or off duty, for a period of one year from the time he began work. Grusendorf brought suit against the City of Oklahoma City and his supervisors at the Oklahoma City Fire Department under 42 U.S.C. Sec. 1983, claiming his constitutional rights of liberty, privacy, property and due process had been violated. The district court for the Western District of Oklahoma granted the defendants' motion to dismiss Grusendorf's suit and awarded the defendants $2,250 in attorney's fees.
 
 
 2
 Grusendorf first applied for a position as firefighter with the Oklahoma City Fire Department in January, 1983, but was not hired. He thereafter devoted his energies to becoming a qualified applicant for future openings with the fire department by studying firefighting manuals, getting into top physical condition and, finally, giving up cigarette smoking. When the Oklahoma City Fire Department announced openings for the position of firefighter trainee in September, 1984, Grusendorf applied again. After taking a written examination, a physical ability test, and receiving a medical checkup by a physician, Grusendorf was ranked fifth on a list of four hundred applicants. He was hired in October, 1984, as a firefighter trainee. Upon being hired, Grusendorf signed a certificate indicating that he had read and understood the fire department's non-smoking rule for firefighter trainees and agreed to abide by it.
 
 
 3
 The incident that precipitated Grusendorf's dismissal occurred when, after a "particularly stressful day," Grusendorf went to lunch with several co-workers. This lunch break was unpaid and constituted Grusendorf's free time. While at lunch, Grusendorf took approximately three puffs from a cigarette and extinguished it. This act was observed by another city employee who reported the incident to the Oklahoma City Fire Department. Fire Chief Jimmy R. Catledge questioned the trainees who had been present at the lunch about the report and threatened to discharge them all if the individual who had smoked the cigarette did not identify himself. When Grusendorf admitted that he was the smoker, Chief Catledge fired him.
 
 
 4
 Grusendorf argues on appeal that the non-smoking condition imposed by the Oklahoma City Fire Department required him to surrender his constitutional rights in the area of liberty and privacy.[1] The rights of liberty and privacy that Grusendorf relies upon are not clearly spelled out in the constitution. They have been variously described as "penumbras" emanating from the Bill of Rights, Griswold v. Connecticut, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1964), "zones of privacy" implicit in the fourteenth amendment's concept of liberty, Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 151, 82 L.Ed. 288 (1937), or simply as "the right to be let alone...." Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). The Supreme Court recognized these implicit rights when, for example, it upheld the right of an individual to provide children with foreign language instruction, Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the right of parents to educate children in private schools, Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) and the right of married couples to use contraceptives, Griswold, 381 U.S. at 479, 85 S.Ct. at 1678, even though no provision in the Constitution or Bill of Rights specifically protects those activities. In the same spirit, Grusendorf argues that although there is no specific constitutional right to smoke, it is implicit in the fourteenth amendment that he has a right of liberty or privacy in the conduct of his private life, a right to be let alone, which includes the right to smoke.
 
 
 5
 Grusendorf contends that the government may not unreasonably infringe upon its employees' freedom of choice in personal matters that are unrelated to the performance of any duties. He notes that in Hander v. San Jacinto Junior College, 519 F.2d 273, 277 (5th Cir.1975), the court held "constitutionally impermissible" a junior college's requirement that instructors be clean shaven and wear "reasonable hair styles" because the regulation had no reasonable relation to any legitimate administrative or educational function. Similarly, Grusendorf points out that in Keyishian v. Board of Regents, 385 U.S. 589, 605, 87 S.Ct. 675, 684, 17 L.Ed.2d 629 (1967), the Supreme Court expressly rejected the premise "that public employment ... may be conditioned upon the surrender of constitutional rights which could not be abridged by direct government action...." Grusendorf concludes that since the defendants have failed to demonstrate a rational reason for the non-smoking rule, it is likewise constitutionally impermissible and unenforceable.
 
 
 6
 The defendants deny that the non-smoking regulation infringes upon any liberty or privacy interest. They point out that these rights of liberty and privacy have been recognized in only a limited number of circumstances. In Roe v. Wade, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973), the Supreme Court observed that only "personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' [citation omitted] are included in this guarantee of personal liberty." In Carey v. Population Services International, 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977), the Court outlined the current reach of these freedoms as embracing personal decisions relating to marriage, procreation, contraception, family relationships, child rearing and education. The defendants argue that the act of smoking a cigarette does not rise to the level of a fundamental right and, further, that since there is no fundamental right to smoke a cigarette, no balancing test nor rationale of any kind is needed to justify the rule.
 
 
 7
 Though we agree with the defendants that cigarette smoking may be distinguished from the activities involving liberty or privacy that the Supreme Court has thus far recognized as fundamental rights, we are not confident that this observation effectively disposes of the Grusendorf's claim. It can hardly be disputed that the Oklahoma City Fire Department's non-smoking regulation infringes upon the liberty and privacy of the firefighter trainees. The regulation reaches well beyond the work place and well beyond the hours for which they receive pay. It burdens them after their shift has ended, restricts them on weekends and vacations, in their automobiles and backyards and even, with the doors closed and the shades drawn, in the private sanctuary of their own homes.
 
 
 8
 Furthermore, while it is true that the Court has thus far recognized a right of liberty or privacy in only a handful of circumstances, it is also true that "the outer limits of this aspect of privacy have not yet been marked by the Court...." Carey v. Population Services International, 431 U.S. at 684, 97 S.Ct. at 2015. In a case similar to ours, for example, the Court considered whether a county regulation limiting the length of a police officer's hair violated a liberty interest protected by the fourteenth amendment. Kelley v. Johnson, 25 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). Writing for the majority, Justice Rehnquist observed that the plaintiff's claim to a liberty interest in his choice of hair styles was distinguishable from the kinds of liberty interests the Court had previously recognized but noted, also, that "whether the citizenry at large has some sort of 'liberty' interest within the Fourteenth Amendment in matters of personal appearance is a question on which this Court's cases offer little, if any, guidance." Id. at 244, 96 S.Ct. at 1444. Without resolving the issue, Justice Rehnquist proceeded to "assume" that there was such a liberty interest under the fourteenth amendment and decided the case against the plaintiff on other grounds.[2] Id.
 
 
 9
 Nor are we inclined to accept the defendants' contention that, since cigarette smoking has not been recognized as a fundamental right, no balancing test nor rationale of any kind whatsoever is needed to justify the restriction. This reasoning would seem to suggest that the state can, arbitrarily and for no reason, condition employment upon an agreement to refrain from any of a nearly limitless number of innocent, private and personal activities. We would be reluctant to go this far even if the law would tolerate such a venture. The success of the defendants' argument, however, does not hinge upon this contention.
 
 
 10
 To resolve the issue of whether or not Grusendorf's rights of liberty or privacy were violated by the non-smoking regulation, it is instructive to study the Supreme Court's approach in Kelley v. Johnson. As noted above, that case is similar to ours though the plaintiff there was a police officer rather than a firefighter and claimed a fourteenth amendment right to grow a beard rather than a right to smoke a cigarette.
 
 
 11
 In Kelley, the Court assumed a liberty interest in matters of personal appearance. The Court noted, however, that both the state and federal governments, as employers, have interests sufficient to justify comprehensive and substantial restrictions upon the freedoms of their employees that go beyond the restrictions they might impose on the rest of the citizenry. Id. at 245, 96 S.Ct. at 1444. See also, Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); CSC v. Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). The Court in Kelley also observed that a county's chosen mode of organization for its police force was entitled to the same deference and presumption of legislative validity as state regulations enacted pursuant to the state's police powers. Kelley v. Johnson, 425 U.S. at 247, 96 S.Ct. at 1445. See also, Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed. 469 (1952).
 
 
 12
 In Kelley, the Court explained that the issue was not whether there existed a genuine public need for the regulation but "whether respondent can demonstrate that there is no rational connection between the regulation ... and the promotion of safety of persons and property." Kelley v. Johnson, 425 U.S. at 247, 96 S.Ct. at 1445. Indeed, the Court concluded, the respondent must demonstrate that the regulation is "so irrational that it may be branded 'arbitrary' and therefore a deprivation of respondent's 'liberty' interest in freedom to choose his own hair style." Id. at 248, 96 S.Ct. at 1446 (quoting, Williamson v. Lee Optical Co., 348 U.S. 483, 487-88, 75 S.Ct. 461, 464-65, 99 L.Ed. 563 (1955)).
 
 
 13
 Recognizing that the overwhelming majority of state and local police officers are clean shaven and uniformed, either for the purpose of making them readily recognizable to the public or to foster an esprit de corps, the Court concluded that either purpose provided a sufficiently rational justification for the regulation to outweigh the respondent's claim under the liberty guarantee of the Fourteenth Amendment. Kelley v. Johnson, 425 U.S. at 248, 96 S.Ct. at 1446.
 
 
 14
 In applying the Kelley approach to our case, we begin by assuming that there is a liberty interest within the fourteenth amendment that protects the right of firefighter trainees to smoke cigarettes when off duty.[3] At the same time, however, we take into account the heightened interest the state government has in regulating the firefighters by virtue of being their employer. Thus, we extend to the non-smoking regulation a presumption of validity.
 
 
 15
 With this presumption of validity in mind, we consider whether there is a rational connection between the non-smoking regulation and the promotion of the health and safety of the firefighter trainees. We need look no further for a legitimate purpose and rational connection than the Surgeon General's warning on the side of every box of cigarettes sold in this country that cigarette smoking is hazardous to health. Further, we take notice that good health and physical conditioning are essential requirements for firefighters. We also note that firefighters are frequently exposed to smoke inhalation and that it might reasonably be feared that smoking increases this health risk. We conclude that these considerations are enough to establish, prima facie, a rational basis for the regulation.
 
 
 16
 The one peculiar aspect of the non-smoking regulation that does not appear entirely rational is that it is limited in its application to first year firefighter trainees only. The rest of the firefighters, for whom good health and physical conditioning are no doubt also important, are apparently free, as far as the Oklahoma City Fire Department is concerned, to smoke all the cigarettes they desire. Grusendorf, however, did not raise an equal protection objection to the rule. Since neither side mentioned, let alone explained, this aspect of the regulation in their briefs,[4] we are not inclined to address it sua sponte.
 
 
 17
 As against this prima facie rational explanation for the non-smoking regulation, Grusendorf does not raise any argument or bring to our attention any information suggesting that the regulation is irrational. Grusendorf, apparently misapprehending where the burden lies, contends that the defendants have an obligation to justify the regulation so that he may attack their rationale. As we have seen in Kelley, however, the burden is upon Grusendorf to prove that the regulation is irrational and arbitrary. The initial burden is not upon the defendants to justify the rule.
 
 
 18
 Since the non-smoking regulation appears rational on its face and since Grusendorf has not challenged this prima facie rationality by specifying any irrational aspects of the regulation, we hold that the rule is valid and enforceable.
 
 
 19
 The other issue Grusendorf raises in this appeal concerns the district court's award of attorney's fees to the defendants. Grusendorf argues that since he brought this action under 42 U.S.C. Sec. 1983, attorney's fees should be awarded to the prevailing defendants only if the plaintiff's action was frivolous, unreasonable, or groundless. Pike v. City of Mission, Kansas, 731 F.2d 655 (10th Cir.1984). Noting the policy concerns behind this rule, such as encouraging plaintiffs to bring good-faith actions to vindicate civil rights causes, Grusendorf argues that awards of attorney's fees are usually limited to situations in which the plaintiff's action is wholly groundless or without foundation. Hughes v. Row, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Grusendorf urges that his claim does not fall into this category and that the award of attorney's fees was therefore improper.
 
 
 20
 The defendants do not argue, and we do not hold, that Grusendorf's claim that the non-smoking regulation violated his rights of liberty and privacy is frivolous, unreasonable or groundless. Litigation regarding smoking is a relatively new phenomenon, and we have discovered no decisions dealing with the issue in the context of the fourteenth amendment.
 
 
 21
 The defendants do argue, however, that it was frivolous, unreasonable and groundless for Grusendorf to name and bring an action against the individual defendants. They argue that the individual defendants were entitled to qualified immunity from suit and that, by virtue of such qualified immunity, they were shielded from liability for civil damages insofar as their conduct did not violate any clearly established constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants argue that the right to smoke is not a clearly established or well known right and that by proceeding against the individual defendants, Grusendorf action was vexatious and in bad faith. The defendants also point out that Grusendorf failed to respond to their motion for attorney's fees within the fifteen day period required by Rule 14(a) of the local rules of the United States District Court for the Western District of Oklahoma.
 
 
 22
 A review of the record suggests that the district court found the defendants' contentions persuasive. The defendants moved for an award of attorney's fees and submitted briefs in support thereof, together with affidavits from their attorneys detailing their fees, on May 7, 1985. Grusendorf failed to respond to this motion within fifteen days but "after being fully advised in the premises, and for good cause being [shown]," the district court on May 30, 1985, granted Grusendorf leave to file a reply brief. On the following day, May 31, 1985, noting that it appeared that the defendants' motion for attorney's fees "is unopposed within the time provided by local court rule ..." and concluding that the motion "is therefore deemed confessed....", the district court entered judgment awarding attorney's fees to the defendants. The district court did not award all the attorney's fees that defendants requested. Rather, the court awarded $2,225, a figure representing only the fees charged by the lawyers for the individual defendants and not the expenses incurred by the City of Oklahoma City.
 
 
 23
 Grusendorf did write a brief for the district court, a copy of which accompanied his motion, another copy of which is part of the record. Neither copy of the brief, however, bears a stamp indicating that the brief was filed with the district court, nor does the docketing statement indicate such filing. The order granting Grusendorf leave to file a late brief does not state a deadline, and we do not know what communications occurred between Grusendorf and the district court. Grusendorf does not argue that he was misled by or misunderstood the court's order granting him leave. Rule 14(a) provides that the decision to shorten or lengthen the time in which the parties must respond to a motion is within the court's discretion.
 
 
 24
 It is our understanding of these facts and events that the district court granted Grusendorf leave to file his brief although the time limit had already expired. The day following the granting of this leave, when the plaintiff still had not filed his brief, the district court entered a judgment against Grusendorf based on the only briefs before it, those of the defendants. Pursuant to Rule 14(a) of the local rules, the district court took it as confessed by Grusendorf that the individual defendants obviously enjoyed qualified immunity from suit and that suit against them was frivolous, unreasonable and groundless. Under these circumstances we are not inclined to reverse the district court's exercise of its discretion.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The Honorable Bruce S. Jenkins, United States District Court Judge for the District of Utah, sitting by designation
 
 
 [1]
 Grusendorf's brief also indicates, apparently inadvertently, that the non-smoking rule violated his property rights under the fourteenth amendment. It was established at oral argument, however, that as a probationary employee, Grusendorf did not have a sufficiently reasonable expectation of continued employment to create a property interest in his job. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Hall v. O'Keefe, 617 P.2d 196 (Okla.1980); and Vinyard v. King, 728 F.2d 428 (10th Cir.1984)
 
 
 [2]
 Justice Marshall, joined in dissent by Justice Brennan, argued that the fourteenth amendment clearly protects against comprehensive regulation of what citizens may or may not wear and found no rational relationship between the regulation and the state's legitimate interests. Id. at 250, 254, 96 S.Ct. at 1447, 1449. Justice Powell wrote separately in concurrence "to make clear that, contrary to the concern expressed in the dissent, I find no negative implication in the opinion with respect to a liberty interest within the Fourteenth Amendment as to matters of personal appearance." Id. at 249, 96 S.Ct. at 1446. Justice Stevens took no part in the consideration or the decision
 
 
 [3]
 We are not unmindful that the Supreme Court in Bowers v. Hardwick, --- U.S. ----, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986) cautioned that federal courts should not take an expansive view of their authority to discover new fundamental rights:
 Nor are we inclined to take a more expansive view of our authority to discover new fundamental rights imbedded in the Due Process Clause. The Court is most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or design of the Constitution. That this is so was painfully demonstrated by the face-off between the Executive and the Court in the 1930's, which resulted in the repudiation of much of the substantive gloss that the Court had placed on the Due Process Clause of the Fifth and Fourteenth Amendments. There should be, therefore, great resistance to expand the substantive reach of those Clauses, particularly if it requires redefining the category of rights deemed to be fundamental. Otherwise, the Judiciary necessarily takes to itself further authority to govern the country without express constitutional authority. The claimed right pressed on us today falls far short of overcoming this resistance.
 
 
 [4]
 An allusion was made at oral argument to the collective bargaining agreement between the Oklahoma City Fire Department and the union that represents the full status firefighters suggesting that the collective bargaining agreement forbids imposition of a non-smoking regulation upon union firefighters