625 So.2d 899 (1993)
Arlene KURTZ, Appellant,
v.
The CITY OF NORTH MIAMI, Florida, Appellee.
No. 92-2038.
District Court of Appeal of Florida, Third District.
October 12, 1993.
*900 Mitrani, Rynor & Gallegos, P.A., and Pamela A. Chamberlin, Miami, for appellant.
Pedro P. Echarte, Jr., Miami, Thomas M. Pflaum, Micanopy, for appellee.
Before HUBBART, JORGENSON and COPE, JJ.
JORGENSON, Judge.
By this appeal we determine whether the City of North Miami may require prospective job applicants to refrain from lawful conduct unrelated to job functions in order to be considered for employment. We conclude that it may not and reverse the summary judgment entered against Arlene Kurtz.
Kurtz submitted an employment application for a clerk-typist position with the City of North Miami. In December 1989, Kurtz took and passed a written examination required for all prospective applicants. In March 1990, the City Manager promulgated Administrative Regulation 1-46. The regulation requires all job applicants to sign an affidavit stating that they have not used tobacco or tobacco products for at least one year immediately preceding the application.[1] According to the regulation, the objective is to reduce both health costs and the amount of productivity lost to absenteeism.[2]
In May 1990, Kurtz was notified that there was an opening for a clerk-typist. At her interview, she was informed of Regulation 1-46. Kurtz told the interviewer that she was a smoker and could not truthfully sign an affidavit to comply with the regulation. The interviewer told Kurtz that she would not be considered for employment until she was smoke free for one year.
Kurtz filed a complaint seeking to enjoin enforcement of the regulation and asking for a declaratory judgment finding the regulation unconstitutional. Kurtz moved for summary judgment, and the City filed a cross-motion for summary judgment. The City filed numerous exhibits supporting the position that smoking is hazardous to an individual's health and that the economic costs of hiring a smoker are higher than the costs of hiring a non-smoker. The court found that the regulation did not violate any provision of either the Florida or the United States constitution.
The City argues it has a compelling interest in saving money for taxpayers by employing only healthy applicants.[3] However, if the City has a compelling interest in *901 saving money for taxpayers by employing only healthy applicants, the City could conceivably seek to regulate other lawful private activities that affect a person's physical health such as drinking, eating, exercising, and engaging in certain sexual practices.[4] We find that Kurtz' privacy rights are involved when the City requires her to refrain from smoking for a year prior to being considered for employment. Although the City has an interest in saving taxpayers money by decreasing insurance costs and increasing productivity, such interest is not sufficient to outweigh the intrusion into Kurtz' right of privacy. Regulation 1-46 violates article I, section 23, of the Florida Constitution as the regulation constitutes an impermissible intrusion into Kurtz' private conduct and has no relevance to the performance of the duties involved with a clerk-typist.
Because Florida has its own express constitutional provision guaranteeing the right of privacy, article I, section 23,[5] we first examine the regulation under the Florida Constitution. If the regulation fails to withstand constitutional muster under Florida law, no further analysis under federal law is required. See In re T.W., 551 So.2d 1186, 1190 (Fla. 1989).
Article I, section 23, provides that "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life." Art. I, § 23, Fla. Const. This explicit constitutional right of privacy embraces more privacy interests and extends more protection than the right of privacy provided under the due process clause of the federal constitution. In re T.W., 551 So.2d at 1192; Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 548 (Fla. 1985). As recognized by the Florida Supreme Court in Winfield,
[t]he citizens of Florida opted for more protection from governmental intrusion when they approved article I, section 23 of the Florida Constitution. This amendment is an independent, freestanding constitutional provision which declares the fundamental right to privacy. Article I, section 23 was intentionally phrased in strong terms. The drafters of the amendment rejected the use of the words "unreasonable" or "unwarranted" before the phrase "governmental intrusion" in order to make the privacy right as strong as possible.
477 So.2d at 548.
Before the right of privacy is implicated, however, there must be a legitimate expectation of privacy. Winfield, 477 So.2d at 547. If there is a legitimate expectation of privacy, the government has the burden of proving that the challenged regulation serves a compelling state interest and accomplishes its goals through the use of the least intrusive means. Id. The Florida Supreme Court has found a legitimate expectation of privacy in cases dealing with personal autonomy and in cases dealing with disclosure of private information. See In re Guardianship of Browning, 568 So.2d 4 (Fla. 1990) (right of self-determination); Shaktman v. State, 553 So.2d 148 (Fla. 1989) (government gathering telephone numbers through use of pen register); In re T.W., 551 So.2d at 1186 (woman's decision whether or not to continue pregnancy); Rasmussen v. South Florida Blood Serv., Inc., 500 So.2d 533 (Fla. 1987) (confidential donor information concerning AIDS-tainted blood supply); Winfield, 477 So.2d at 544 (legitimate expectation of privacy in bank records); Florida Bd. of Bar Examiners Re: Applicant, 443 So.2d 71 (Fla. 1983) (bar application questions concerning disclosure of psychiatric counseling).
The right of privacy is involved when the City passes a regulation which effectively denies applicants the opportunity to be considered for employment with the City merely for engaging in lawful conduct *902 unrelated to job functions.[6] An applicant does not have a constitutional right to government employment. Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 311, 96 S.Ct. 2562, 2565, 49 L.Ed.2d 520 (1976). An applicant, however, has a legitimate expectation of privacy when the government through requirements for employment seeks to intrude into the applicant's personal life. In Florida Bd. of Bar Examiners, the Florida Supreme Court recognized that although a bar applicant had no constitutional right to be admitted to the Florida Bar, the applicant had a legitimate expectation of privacy in not disclosing certain information. 443 So.2d at 74. Nevertheless, because the information was relevant to determine the applicant's fitness to practice law, the state had a compelling interest in obtaining the information. Id. at 75.
Regulation 1-46 intrudes into an applicant's private life. Although Florida has its own express constitutional clause guaranteeing the right of privacy, we look to federal law for guidance. In Grusendorf v. City of Oklahoma City, 816 F.2d 539 (10th Cir.1987), the court upheld a regulation prohibiting firefighter trainees from smoking cigarettes either on or off duty for a period of one year. The court distinguished smoking from the liberty interests the Supreme Court has recognized as fundamental. Id. at 541. The court, however, specifically acknowledged that the regulation infringed upon the liberty and privacy interest of firefighter trainees because
[t]he regulation reaches well beyond the work place and well beyond the hours for which they receive pay. It burdens them after their shift has ended, restricts them on weekends and vacations, in their automobiles and backyards and even, with the doors closed and the shades drawn, in the private sanctuary of their own homes.

Id. at 541 (emphasis added). The court further recognized that a balancing or rational connection test was required to prevent the state from "arbitrarily and for no reason, condition[ing] employment upon an agreement to refrain from any of a nearly limitless number of innocent, private and personal activities." Id. at 542.[7]
Like the regulation in Grusendorf, Regulation 1-46 restricts Kurtz' smoking habit even in the privacy of her own home. Although the federal constitution requires a compelling state interest only in cases involving fundamental rights, the range of privacy issues requiring a compelling interest standard are far broader under article I, section 23. The City's attempt to regulate lawful conduct unrelated to job functions is the type of activity the citizens of Florida sought to restrict when they opted to approve section 23.
The City failed to meet its burden of showing a compelling interest sufficient to outweigh Kurtz' privacy interest. The City has *903 a legitimate interest in attempting to reduce health insurance costs and to increase productivity. See Bowman v. Township of Pennsauken, 709 F. Supp. 1329 (D.N.J. 1989) (there is a legitimate interest in reducing litigation and lessening liability insurance expenses). Moreover, we note that the Surgeon General's findings that cigarette smoking is hazardous to health is well supported. However, the City's interest in saving money for the taxpayers does not override Kurtz' privacy interest in being free from regulation of her personal life as a condition of government employment, especially when that condition is lawful and unrelated to job functions. Unlike Florida Bd. of Bar Examiners, where the supreme court found that an applicant's psychological history was relevant to determine the applicant's fitness to practice law, here the off-duty use of tobacco has no relevance to a clerk-typist's ability to perform the duties required by such a job. Although the City may, and indeed perhaps should, provide a smoke-free working environment,[8] we conclude that the City's interests are not sufficient to reach the private lawful conduct of potential employees. In sum, we reverse the summary judgment.
Reversed.
NOTES
[1] The Florida Clean Indoor Air Act (FCIAA) does not preempt the City's employment regulation. The intent of the FCIAA was to provide a uniform code restricting indoor smoking in public places. § 386.202, Fla. Stat. (Supp. 1992). The FCIAA preempts all local ordinances dealing with the subject of restriction of indoor smoking. § 386.209, Fla. Stat. (Supp. 1992). Regulation 1-46 only attempts to regulate the City's employment practices and is not concerned with regulating indoor smoking.
[2] The regulation recognizes that the Surgeon General of the United States has declared the use of tobacco products hazardous to an individual's health. The regulation concludes that poor health, as a result of tobacco use, increases the premium costs for insurance plans and decreases employee productivity. The City claims that the costs of higher premiums and lower productivity are eventually borne by the taxpayers of the City of North Miami.
[3] All current employees are grandfathered in under the clause. Further, once an applicant has been hired, he or she is free to start or resume smoking at any time. The one year smoke-free period applies only to the one year period prior to applying for work.
[4] See Elizabeth B. Thompson, Note, The Constitutionality of an Off-Duty Smoking Ban for Public Employees: Should the State Butt Out?, 43 Vand.L.Rev. 491, 520-21 (1990).
[5] Article I, Section 23 provides:

SECTION 23. Right of Privacy.  Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
Art. I, § 23, Fla. Const.
[6] The effect of the regulation is also to require applicants to disclose whether or not they use tobacco or tobacco products. The Supreme Court has recognized that there is a privacy interest in avoiding disclosure of personal matters. Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); see also Nixon v. Administrator of General Servs., 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). "[T]here is no doubt that ... [article I, section 23] was intended to protect the right to determine whether or not sensitive information about oneself will be disclosed to others." Rasmussen, 500 So.2d at 536. "A fundamental aspect of personhood's integrity is the power to control what we shall reveal about our intimate selves, to whom, and for what purpose." Byron, Harless, Schaffer, Reid & Assocs., v. State ex. rel. Schellenberg, 360 So.2d 83, 92 (Fla. 1st DCA 1978), quashed, 379 So.2d 633 (Fla. 1980).

There is a right of privacy involved when a government agency gathers private and personal information from applicants. See Gerald B. Cope, Jr., To Be Let Alone: Florida's Proposed Right of Privacy, 6 Fla.St.U.L.Rev. 673, 759-760 (1978). "[I]t is difficult to imagine a greater or more improper intrusion of privacy" than when the government evaluates candidates to a job by conducting psychological tests which gather highly personal and sensitive information such as social activities, comments on spouse's personality, church associations and drinking and smoking habits. Id. "Not only ... [is such] information of the most personal kind, but it ... [has] no arguable relevance to the applicant's ability to" perform the job. Id.
[7] Although the court in Grusendorf found a reasonable relationship between the regulation prohibiting firefighter trainees from smoking cigarettes either on duty or off-duty and the health and safety of the firefighter trainees, the court specifically noted that "good health and physical conditioning are essential requirements for fire-fighters." 816 F.2d at 543 (emphasis added).
[8] See supra note 1.